## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**FERNANDO NUNEZ,**                    :

    **Plaintiff**                         :

                            **CIVIL ACTION NO. 3:15-1573**

    **v.**                               :

                            **(JUDGE MANNION)**

**TOM W. WOLF*, et al.,***              :

    **Defendants**                        :

## M E M O R A N D U M[1]

*Pro se* Plaintiff, Fernando Nunez, a state inmate, filed this civil rights complaint pursuant to 42 U.S.C. §1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§2000cc, *et. seq.* Presently before the Court is Defendants' motion to dismiss the amended complaint (ECF No. 35) and Plaintiff's motions to file a supplemental complaint (ECF Nos. 43 and 45). For the following reasons, the Court will grant in part, and deny in part, the Defendants' motion to dismiss the Amended Complaint. Mr. Nunez's motions to file a supplemental complaint will be denied without prejudice to him filing a separate action concerning his other alleged RLUIPA claims.

---

[1] This matter was recently reassigned to the undersigned following the passing of the Hon. A. Richard Caputo.

## I.     Allegations of the Amended Complaint

On August 9, 2015, Mr. Nunez filed his Complaint in this matter. (ECF No. 1.) Named as Defendants are Thomas Wolf, Governor of the Commonwealth of Pennsylvania, John Wetzel, Secretary of the Pennsylvania Department of Corrections (DOC), and Tabb Bickel, DOC Regional Deputy Secretary.[2] Mr. Nunez filed an Amended Complaint after Defendants sought to dismiss the original Complaint. (ECF No. 34.) The facts from Mr. Nunez's Amended Complaint, taken as true and viewed in the light most favorable to Plaintiff, are as follows:[3]

Mr. Nunez is a devout Muslim now, having converted to Islam in 2003. (*Id.* at ¶7.) In August 2013, while incarcerated, Mr. Nunez married. (*Id.* at ¶8.) In January 2015, Mr. Nunez submitted three Religious Accommodation Requests (RAR) seeking: (1) conjugal visits with his spouse; (2) the opportunity to engage in private congregational prayer with his visitors during contact visits; and (3) to be "ritually circumcised". (*Id.* at ¶15.) Defendant

---

[2] On April 9, 2019, Judge Caputo granted Mr. Nunez's motion to voluntarily dismiss Corrections Officer A. Duvall and Superintendent James Eckard. (ECF No. 33.)

[3] For the purpose of a motion to dismiss, the Court accepts factual allegations in the Complaint as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Bickell denied all three RAR's simultaneously in April 2015, Defendant Wetzel received a copy of the decisions. (*Id.* at ¶16.)

Following their wedding, the Sunnah indicates a Muslim couple spend three consecutive nights together. After their marriage, it is Sunnah for couples to spend at least one night together every three days unless both spouses understand "that their time apart is temporary and not intentional." (*Id.* at ¶14) (emphasis in the original). The Pennsylvania Department of Corrections (DOC) *Inmate Visiting Privileges Policy*, DC-ADM 812 and *Inmate Marriages Policy*, DC-ADM 821,[4] prohibit Mr. Nunez from physically consummating his marriage in accordance with his religious beliefs. (*Id.* at ¶9.) These policies, in combination with crowded and public visitation areas, also prohibit Mr. Nunez from demonstrating the appropriate level of private intimacy, physical or verbal, with his wife. DOC policy limits physical contact between visitors to a "brief kiss and embrace upon meeting and departing." (*Id.* at ¶¶50 - 57.) Defendant Bickell denied Mr. Nunez's request for "weekend conjugal visits (Saturday and Sunday) twice a month" citing the "categorical prohibition on conjugal visits" and security, facility, and health concerns, even though other states allow for such visits. (*Id.* at ¶¶24 – 25, 29 – 30, 33

---

[4] Available on line at https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx (last visited April 3, 2020.)

and 36.) Mr. Nunez "is [now] compelled to modify his religious beliefs by neglecting his religious duties and obligations in such a way as to sin and disobey Allah and [the] Prophet Muhammad's Sunnah by engaging in … 'Celibacy'." (*Id.* at ¶61.)

The DOC also has a "state-wide policy that prohibits Plaintiff and his visitors from congregating in prayer during contact visits in a manner consistent with [Mr. Nunez's] religious beliefs." (*Id.* at ¶68.) Defendant Bickell cites safety concerns when denying Mr. Nunez's request for visitor congregational prayer because it "would pose a major distraction to families of other inmates meeting their loved ones" and because "the institution cannot provide every inmate with private visiting rooms for congregational prayers with family." (*Id.* at ¶69 – 70.)

Mr. Nunez's remaining two claims involve Muslim religious grooming practices. There are five mandatory characteristics of "fitrah" that all Muslims "must" practice: (1) circumcision; (2) shaving of pubic hair; (3) trimming the mustache; (4) clipping the nails; and (5) the plucking of armpit hair. (*Id.* at ¶90.) Mr. Nunez converted to Islam while uncircumcised. (*Id.* at ¶ 95.) Circumcision is a minor surgery. (*Id.* at ¶96.) Defendant Bickell denied Mr. Nunez's request for circumcision stating that it is "an elective surgery and not medically necessary … it is unreasonable for the [DOC] to assume the costs

- 4 -

of elective surgery for all inmates, including medical expenses which it would incur if medical complications ensued". (*Id.* at ¶98.) Mr. Nunez argues his request for circumcision is religiously based, and not due to medical necessity. (*Id.* at ¶98.)

In March 2015, Mr. Nunez submitted a RAR requesting the use of an electric razor to perform religious grooming consistent with his religious beliefs because "the standard razors sol[d] [i]n commissary irritate his skin … [c]ausing painful razor bumps." (*Id.* at ¶17 and ¶80.) Defendant Bickell denied his request in June 2015. (*Id.* at 22.) Defendant Wetzel received a copy of the decision. (*Id.* at ¶19.) "[B]ecause of the adverse side effect to using the standard razor sold by the [DOC which] causes him pain and distracts him from concentrating while in prayer", Mr. Nunez has "abandon[ed] a sacred religious practice". (*Id.* at ¶81.) The DOC only allows inmates with a medical condition to purchase electric razors.  (*Id.* at ¶82.)

On August 3, 2015, Mr. Nunez sent Governor Wolf a "Notice of Intent to File Civil Action" urging him to intervene in Defendant Wetzel and Defendant Bickell's actions which violate his constitutional rights and RLUIPA. (*Id.* at ¶20.) Defendant Wolf failed to intercede on Mr. Nunez behalf. (*Id.*at ¶28.) Mr. Nunez seeks declaratory and injunctive relief as well as attorney fees and costs.

## II.   Motion to Dismiss Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of the grounds for the claims. Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (*per curiam*). While detailed factual allegations are not required, conclusory statements that allege the complainant is entitled to relief are inadequate. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Legal conclusions that provide the framework for a complaint must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

When considering a Rule 12(b)(6) motion, a court is limited to determining if a plaintiff is entitled to offer evidence in support of his or her claims. *Semerenko v. Cendant Corp.,* 223 F.3d 165, 173 (3d Cir 2000). A court does not consider whether a plaintiff will ultimately prevail. (*Id.*) In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled

to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). If there are well-pleaded factual allegations, then a court must assume their truthfulness in deciding whether they raise an entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 - 56, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Dismissal is only appropriate when, accepting as true all the facts alleged in the complaint, Plaintiff has not plead enough factual allegations to provide a reasonable expectation that discovery will lead to evidence of each necessary element. *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017).

In deciding a Rule 12(b)(6) motion, a court considers the allegations in the complaint and exhibits attached to the complaint. *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010). In addition to the complaint and any exhibits attached, a court may examine "legal arguments presented in memorandums or briefs and arguments of counsel." *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002) (quotation omitted). A court may also consider a "document integral or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997). A court, however, need not assume the plaintiff can prove facts that were not

alleged in the complaint. *City of Pittsburgh v. W. Penn Power Co.,* 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1429 – 30). A plaintiff may not amend their Complaint by asserting new fact in an opposition brief. The Court does not consider facts when resolving a motion to dismiss. *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

A complaint filed by a *pro se* plaintiff must be liberally construed and "held to less stringent standards than formal pleadings drafted by a lawyer." *Fantone v. Latini,* 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 – 21, 92 S.Ct. 594, 596, 596, 30 L.2d 652 (1972)); *see Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Nonetheless, the complaint still must contain allegations permitting the reasonable inference that the defendant is liable for the misconduct alleged. *Jackson v. Div. of Developmental Disabilities,* 394 F. App'x 950, 951 n. 3 (3d Cir. 2010) (nonprecedential) (quoted case omitted).

## III.   Discussion

### A.   Governor Wolf's Lack of Personal Involvement

Defendants seeks the dismissal of all claims against Governor Wolf in the alleged violations of Mr. Nunez's federal constitutional and statutory rights. (ECF No. 36 at 15.) A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir. 2007). "[A] government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 71 (3d Cir. 2011). A plaintiff may demonstrate the personal involvement of a supervisory defendant by alleging the supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violation." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.,* 372 F.3d 572, 586 (3d Cir. 2004). Claiming that a defendant learned of a constitutional violation after it occurred is insufficient to show that he or she personally directed that violation or had actual knowledge of it at the time it occurred. *Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988) (the after-the-fact submission of a grievance is "simply insufficient" to establish a

defendant's knowledge of an underlying constitutional violation at the time it occurred); *see Rosa-Diaz v. Dow,* 683 F. App'x 103, 107 (3d Cir. 2017) (supervisor's "after-the-fact participation in reviewing grievances or appeals, generally are an insufficient basis to establish" personal involvement). Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode,* 845 F.2d 1208.

Mr. Nunez claims the RLUIPA violations occurred due to the inflexible enforcement of the DOC's policies issued by Secretary Wetzel and Defendant Bickell's denial of each of his RARs. Mr. Nunez does not allege Defendant Wolf formulated either of the DOC's policies in question or directed the actions taken by Defendants Bickell or Wetzel with respect to his RARs. Mr. Nunez's intent-to-sue letter faxed to Governor Wolf, is simply insufficient to allege Governor Wolf's personal involvement in the underlying claims. *Rode,* 845 F.2d at 1208 (transmission of grievance to state governor's office is insufficient to show governor's actual knowledge of alleged harm). Accordingly, the Court will grant Defendants' motion to dismiss with respect to Governor Wolf.

**B.    Mr. Nunez's Official Capacity Claims Against Defendants**

Mr. Nunez's claim for damages asserted under 42 U.S.C. §1983 may not proceed against the Defendants in their official capacities. Individual state employees sued in their official capacity are entitled to Eleventh Amendment immunity. *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew,* 944 F.3d 478, 480 (3d Cir. 2019). Accordingly, Mr. Nunez's official capacity claims against Defendants will be dismissed.

Similarly, Mr. Nunez may not obtain monetary relief from Defendants under RLUIPA. RLUIPA does not create a private right of action for damages against prison officials in their individual capacities, *Sharp v. Johnson,* 669 F.3d 144, 153 (3d Cir. 2012), and claims for damages against them in their official capacities are barred by the sovereign immunity of the Commonwealth of Pennsylvania. *Sossamon v. Texas,* 563 U.S. 277, 293, 131 S.Ct. 1651, 1663, 179 L.Ed.2d 700 (2011). Thus, Mr. Nunez's RLUIPA claims, if successful, may yield only injunctive relief against the Defendants in their official capacities. *Banks v. Sec'y Pennsylvania Dep't of Corr.*, 601 F. App'x 101, 103 (3d Cir. 2015); *Small v. Wetzel*, 528 F. App'x 202, 208 (3d Cir. 2013); Sharp v. Johnson, 669 F.3d 144, 154 (3d Cir. 2012)("RLUIPA does not permit an action against defendants in their individual capacities; [t]hus, RLUIPA cannot impose direct liability on defendants.").

### C.  Mr. Nunez's RLUIPA Claims

RLUIPA "protects institutionalized persons who are unable to freely attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion". *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 2122, 161 L.Ed.2d 1020 (2005). In relevant part, RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §2000cc–1(a).

To establish a *prima facie* case under RLUIPA, an inmate must demonstrate (1) that he engaged in a religious exercise and (2) that the religious exercise was substantially burdened. If the plaintiff makes this *prima facie* showing the burden then shifts to the government "to show that the policy is in furtherance of a compelling governmental interest and is the least restrictive means of furthering this interest. *Washington v. Klem,* 497

F.3d 272, 283 (3d Cir. 2007) (citing 42 U.S.C. §2000cc-1(a)). Alternatively, if the inmate fails to present evidence to support a *prima facie* case, the government need not demonstrate "it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Holt v. Hobbs*, 574 U.S. 352, ____, 135 S.Ct. 853, 864, 190 L.Ed.2d 747 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728, 134 S.Ct. 2751, 280, 189 L.Ed.2d 675 (2014)). The application of the compelling interest standard is context-specific and deferential to the prison authorities' choices about how to run their institution. *Washington*, 497 F.3d at 283 (citing *Cutter*, 544 U.S. at 722 - 23, 125 S.Ct. at 2123).

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief 42 U.S.C. §2000cc–5(7)(A).

> For the purposes of RLUIPA, a "substantial burden" exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington,* 497 F.3d at 280 (emphasis in original). A "substantial burden" includes a rule or regulation which compels the prisoner to engage in

"conduct that seriously violates [his] religious beliefs." *Holt,* 574 U.S. at ____, 135 S.Ct. at 862 (quoting *Hobby Lobby*, 573 U.S. at 720, 134 S.Ct. at 2775). "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise ... not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.* at ____, 135 S.Ct. at 862.

Here, Mr. Nunez, a Muslim, alleges that the DOC is placing a substantial burden on his religious practices by denying him conjugal visits with his wife, group prayer with his visitors, an electric razor and circumcision surgery. He argues the DOC's denial of his requests, citing safety, security, and health concerns, are not justified as other state prisons (i.e. other than Pennsylvania) allow conjugal visits and that the DOC could adapt its contact visitation policy/space to allow group prayer with visitors. He points out that the DOC already provides allowance for inmates to obtain electric razors and circumcisions for medical, but not religious reasons. The Defendants argue that Mr. Nunez fails to state a RLUIPA claim based on any of the denied RARs. The Court disagrees, at this stage of the litigation, with Defendants on three of its four bases for dismissal of Mr. Nunez's RLUIPA claims.

Taking Mr. Nunez's allegations as true and liberally construing them in his favor, with respect to Mr. Nunez's conjugal visits, congregational worship

with visitors, and circumcision claims, he argues that he holds each of these acts as a sincere religious belief which is substantially burdened by the DOC's actions. As such, the Court will not dismiss these RLUIPA claims at this early stage of the proceedings. Whether Mr. Nunez will ultimately prevail on these claims, or whether Defendants will be able to rebut the factually asserted *prima facie* case, can only be determined by further development of a factual record. The court finds that discovery is required in this case before the court can determine if the Defendants are entitled to dismissal of plaintiff's stated RLUIPA claims and whether their denials of his three RORs substantially burden his religious exercise. *See* Abdul-Aziz v. Lanigan, 2020 WL 3287229, *11-13 (D. N.J. June 18, 2020) (district court considered plaintiff inmate's RLUIPA claims and RLUIPA's burden shifting framework after discovery upon the filing of a summary judgment motion by defendant prison officials) (citing, in part, Holt v. Hobbs, 574 U.S. 352, 135 S.Ct. 853 (2015) ("Holt made clear, RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise [ ], not whether the RLUIPA claimant is able to engage in other forms of religious exercise.")). *See also* Williams v. Annucci, 895 F.3d 180, 190 (2d Cir. 2018) (Court considered inmate's RLUIPA's claims after summary judgment motion filed and found that DOC failed to make the required showing with respect to its

evidence of a compelling interest and least restrictive particularized alternatives to adequately respond to the inmate's specific request for accommodations).

Therefore, the Court will deny Defendants' motion to dismiss as to Mr. Nunez's conjugal-visit claim, communal prayer during visitation claim, and circumcision claim at this time. After discovery, if appropriate, Defendants can file a motion for summary judgment regarding these RLUIPA claims.

The Defendants' motion to dismiss Mr. Nunez's RLUIPA claim based on the denial of an electric razor will be granted. Mr. Nunez's sincerely held religious beliefs require him to shave various portions of his body every three days. (ECF No. 34 at ¶ 79.) He does not contend the Defendants prohibit him from doing this. Rather, he states the standard razors sold in commissary cause "his genital area to break out in a skin rash and leaves him ingrown hairs that is both painful and sensitive to the touch." (*Id.* at ¶ 80.) He claims he must abandon his sacred religious practice of fitra because Defendant Bickell denied his RAR request for an electric razor. (*Id.* at ¶ 81 – 83.) He concedes that the Defendants permit inmates to purchase electric razors for medical, but not religious, reasons. (*Id.* at ¶ 82 and Exhs. 1 - 2.) Mr. Nunez's allegation fails to establish prima facie showing of a substantial burden upon his ability to practice his religion based on Defendants' denial

of an electric razor.[5] Accordingly, the Defendants' motion to dismiss as to this claim will be granted.

### D.    Requests to Supplement the Amended Complaint

Pursuant to Federal Rule of Civil Procedure 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." A district court, at any stage of the case, has broad discretion to allow the filing of a supplemental pleading. *T Mobile Northeast LLC v. City of Wilmington, Del.*, 913 F.3d 311, 326 - 57 (3d Cir. 2019). Nevertheless, a court may deny a motion to supplement "in the absence of substantial or undue prejudice because of bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed, or

---

[5] A plaintiff may not amend his complaint through his opposition brief, and new facts presented in an opposition brief may not be considered by the Court. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Mr. Nunez did not assert an Eighth Amendment denial of medical care claim in his Amended Complaint. Accordingly, the Court will not consider Mr. Nunez's argument that he sought, and was denied, a medical exemption to obtain an electric razor.

futility of amendment." *Heyl & Patterson Int'l., Inc., v. F.D. Rich Housing of V.I., Inc.,* 663 F.2d 419, 415 (3d Cir. 1981).

Since the filing of his Amended Complaint and opposition to Defendants' motion to dismiss his Amended Complaint, Mr. Nunez filed a motion to add new RLUIPA claims and additional defendants to his present action (ECF Nos. 43 and 45). He filed a 38-page Supplemental Complaint in support of these motions. (ECF No. 47.) Mr. Nunez seeks to add eight new RLUIPA claims and join Eastern Regional Deputy Michael Wenerowicz and SCI-Mahanoy Superintendent Theresa Delbalso as defendants. (ECF No. 44.)

The eight proposed new claims challenge DOC policies that "categorically" ban: "(1) wireless phones; (2) hom[e] based virtual visits; (3) the purchase and possession of tweezers; (4) scented body oils; (5) private incoming mail; (6) in-cell privacy screens; (7) morning showers, and (8) requires inmates to strip naked, before and after, every contact visit – all of which Nunez asserts places a substantial burden on his religious practice and beliefs as a Muslim. Thus, violating RLUIPA." (*Id.* at 2.)

Mr. Nunez's grievance requesting an electronic tablet for the purpose of virtual visitation and phone capabilities was denied at final review on

January 8, 2016.[6] (ECF No. 47 at ¶26.) On July 17, 2019, Mr. Nunez's RAR challenging the DOC's new mail handling policies with respect to non-legal mail from his spouse was denied. (*Id.* at 51.) On August 4, 2019, Mr. Wenerowicz denied Mr. Nunez's request for a cell phone citing security reasons even though cell phones are allegedly sold in the Commissary at the Union County Jail in South Carolina. (*Id.* at ¶¶57 – 58.) Mr. Nunez's RAR requesting to take morning showers (a privilege reserved for the honor block), especially on Friday's before Jumu'ah, was denied on August 4, 2019. (*Id.* at 59 – 62.) On August 4, 2019, Mr. Wenerowicz denied Mr. Nunez's RAR request for tweezers for plucking armpit and pubic hair citing security reasons. (*Id.* at 63 – 64.) On September 16, 2019, Mr. Nunez's RAR request to purchase 1 oz. scented body oil for daily use was denied based on security concerns. (*Id.* at ¶¶65 – 66.) Again, citing security reasons, on November 9, 2019, Mr. Wenerowicz denied Mr. Nunez's RAR request seeking permission to use a privacy screen in his cell when using the bathroom. (*Id.* at ¶¶67 – 68.) A RAR requesting not to be strip searched

---

[6] A DOC virtual visitation program was institute in September 2018 at select facilities. (*Id.* at ¶27.) Thus, were the Court to allow Mr. Nunez to supplement his suit to include this claim, and only injunctive relief is available, his claim for relief would be moot. The fact that the visitor must physically travel to a designated terminal to access the DOC's virtual visitation program does not impact Mr. Nunez's RLUIPA rights.

before and after a contact visits, based on Mr. Nunez's objection to showing his "awrah or nakedness" to other males, was denied on September 4, 2019. (*Id.* at ¶¶211 – 219.)

Defendants oppose Plaintiff's motions noting that while supplemental pleadings are permitted pursuant to Fed. R. Civ. P. 15(d), Mr. Nunez cannot satisfy the requirements of Fed. R. Civ. P. 20 concerning the permissive joinder of defendants. If permitted to join the new claims and defendants, Mr. Nunez, aside from violating the "same transaction and occurrence or events" standard of Rule 20, he would be flouting the intent of the Prison Litigation Reform Act (PLRA).[7] (ECF Nos. 51 and 52.) Mr. Nunez argues the Defendants would not be prejudiced by the supplementation of his complaint as all claims share the same legal foundation, RLUIPA. (ECF No. 55.)

Two of the proposed claims transpired at SCI-Huntingdon[8] but involved Secretary Wetzel and DOC officials other than Defendant Bickell. The other

---

[7] The Prison Litigation Reform Act of 1995 (PLRA) changed the judicial treatment of civil rights actions filed by state and federal prisoners. One major change prompted by the PLRA was that prisoners must pay the full filing fee in non-habeas actions after the proper exhaustion of all available administrative remedies. *See* 28 U.S.C. §1915; *Ahmed v. Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002) (administrative exhaustion of claims must be complete prior to filing of suit).

[8] *See* ECF No. 47 ¶ 22 (wireless phone and virtual visitation).

claims arose at least three years after the filing of his initial complaint in this matter at SCI-Mahanoy and do not personally involve Defendant Bickell.

The Court agrees with Defendants that Fed. R. Civ. P. 20 must also be considered in conjunction with Rule 15(d). While Mr. Nunez does not address the application of Rule 20 in his Reply, his draft supplemental complaint provides the Court with sufficient information to make a determination as to whether joinder of Superintendent DelBlaso and Regional Deputy Secretary Wenerowicz is appropriate under both Rule 20 and Rule 15.

Mr. Nunez cannot meet the demands of Fed. R. Civ. P. 20 when he seeks to include RLUIPA claims against Regional Deputy Secretary Wenerowicz and Superintendent Delbalso to his present action. Rule 20 of the Federal Rules of Civil Procedure governs the permissive joinder of parties in an action. Rule 20(a)(2) allows persons to "be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16

L.Ed.2d 218 (1966); *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009). However, the policy behind Rule 20 is not a license to join unrelated claims and defendants in a single lawsuit. *See Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (nonprecedential).

Here, Mr. Nunez has not resided at SCI-Huntingdon since September 26, 2016.[9] All but two of the proposed claims arose after his transfer from SCI-Huntingdon. Moreover, Defendant Bickell is not alleged to have any personal involvement in the denial of his request for wireless telephones and virtual visitation. Mr. Nunez fails to demonstrate any commonality among the Defendants and proposed defendants other than they, at one point or another, denied one of his RAR requests.[10] Simply joining any alleged RLUIPA violation that has occurred during the past five years of Mr. Nunez's incarceration that does not involve the same decision makers would be inappropriate. To do so under the guise of Fed. R. Civ. P. 15(d) would violate the precepts of Rule 20. To the extent Mr. Nunez argues that he will be "denied justice" (ECF No. 55 at 8) if he is unable to join his claims in a single

---

[9] *See* ECF No. 10, Notice of Change of Address ("I am no longer housed at SCI-Huntingdon".)

[10] Again, the exception to this statement pertains to the cell phone and virtual visit claims which Mr. Nunez claims he pursued through the DOC's grievance policy and not a RAR. (Doc. 47 at 25.)

action because claims 5 and 6 would be time barred, the Court does not find this argument persuasive.[11] Mr. Nunez states he exhausted each claim. If true, he elected to wait until December 2019 to file his motion to supplement his Amended Complaint. He had the opportunity to file an amended complaint in January 2019 and has not offered an adequate explanation for failing to include some, or all, of his proposed claims at that time. Upon his substantial compliance with the DOC's exhaustion process, he could have filed a civil rights action raising his exhausted RUILPA claim. Accordingly, his motions to join additional parties and RLUIPA claims will be denied.

An appropriate order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: November 13, 2020**
15-1773-01

---

[11] Mr. Nunez specifically refers to the denial of his RARs pertaining to the use of wireless telephones and home base virtual visitation. (*See* ECF No. 55 at 1.)