# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

No. 3:15-CV-1573

FERNANDO NUNEZ

Plaintiff,

V.

TOM W. WOLF, JOHN E. WETZEL

TABB BICKELL, REGIONAL SECRETARY

OF DOC,

Defendants

_____

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

_____

GREGORY G. SCHWAB
General Counsel
Commonwealth of Pennsylvania

TIMOTHY HOLMES
Chief Counsel
Pennsylvania Department of Corrections

By:    ABBY N. TROVINGER
       Assistant Counsel
       Attorney I.D. No. 308329
       Pennsylvania Dept. of Corrections
       1920 Technology Parkway
       Mechanicsburg, PA 17050
Dated: June 30, 2021        atrovinger@pa.gov

**TABLE OF CONTENTS**

I.    STATEMENT OF THE CASE...…………………………………………..1

II.   RELEVANT FACTUAL HISTORY ...........................................................2

II.   STANDARD OF REVIEW ..........................................................................3

III.  STATEMENT OF QUESTIONS PRESENTED ........................................5

IV.   ARGUMENTS ...............................................................................................5

   A.   Summary judgment should be granted in Defendants' favor as to Plaintiff's
        conjugal visits claim because his religion is not being substantially
        burdened, and the Department has several compelling government
        interests in denying Plaintiff a private visiting room for sexual contact with
        his spouse.…………………………………………………………………...6

   B.   Summary judgment should be granted in Defendants' favor as to
        Plaintiff's congregational prayer claim because his religion is not being
        substantially burdened, the Department has several compelling
        government interests in preventing Plaintiff from having a private room
        with visitors, and a least restrictive alternative is available. ...................14

   C.   Summary judgment should be granted in Defendants' favor as to Plaintiff's
        circumcision claim because the Department has compelling government
        interests in declining inmate requests for elective
        surgeries…………………….......................................................................18

V.    CONCLUSION.............................................................................................23

# TABLE OF CITATIONS

Other Authorities

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...........................................................................4
*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...........................................................................4
*Clark v. Modern Grp. Ltd.*,
   9 F.3d 321 (3rd Cir. 1993) ...............................................................4
*Cowher v. Pike County Correctional Facility*,
   2019 WL 3302415 (USMD Pa. 2019)..............................................20
*Cutter v. Wilkinson*,
   544 U.S. 709 (2005)........................................................................5, 6
*Fields v. Paramo*,
   2019 WL 4640502 (E.D. Ca. 2019)..................................................20
*Fuller v. Cate*,
   481 Fed. Appx. 413 (9th Cir. 2012)....................................................9
*Gerber v. Hickman*,
   291 F.3d 617 [2002].........................................................................10
*Hernandez v. Coughlin*,
   18 F.3d 133(2nd Cir. 1994) .............................................................10
*Imprisoned Citizens Union v. Shapp*,
   451 F. Supp. 893 (E.D.Pa. 1978).......................................................7
*Lucas v. Tilton*,
   No. 1:08-cv-00515 AWI GSA, 2010 U.S. Dist. LEXIS 8347, 2010 WL 431737
   (E.D. Cal. Feb. 2, 2010)...................................................................10
*Marsh v. Granholm*,
   No. 2:05-cv-134, 2006 U.S. Dist. LEXIS 59203, 2006 WL 2439760 (W.D.
   Mich., Aug. 22, 2006).......................................................................10
*McCray v. Sullivan*,
   509 F.2d 1332 (5th Cir.1975) .............................................................7
*Owens v. Kernan*,
   2016 WL 3361885 (USDC E.D. Cal. 2016)....................................9, 11
*Pouncil v. Tilton*,
   704 F.3d 568 (9th Cir. 2012) .............................................................9
*Reynolds v. Wagner*,
   128 F.3d 166 (3rd Cir. 1997) ...........................................................19

*Robertson v. Kansas*,
   No. 07-3162-SAC, 2007 U.S. Dist. LEXIS 91266, 2007 WL 4322781 (D. Kan.
   Dec. 10, 2007).................................................................................................10
*Shields v. Foston*,
   No. 2:11-cv-0015 JAM EFB, 2013 U.S. Dist. LEXIS 95776, 2013 WL 3456964
   (E. D. Cal., Jul. 9, 2013) ...........................................................................9, 11
*Thomas v. Corbett*,
   458 M.D. 2013 , pp.  (Pa. Cmwlth. 2013) ...................................................8
*Thomas v. Corbett*,
   90 A.3d 789 (Pa. Cmwlth. 2014)..............................................................6, 7
*Turner v. Safley*,
   482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) .......................................10
*Vega v. Lantz*,
   2009 WL 3157586 (D.C. Conn. 2009) .......................................................17, 20
*Vega v. Lantz*,
   2013 WL 6191855 (D.C. Conn. 2013) ............................................................20
*Washington v. Klem*,
   497 F.3d 272 (3rd Cir. 2007) ...........................................................................6
*Winslow v. Prison Health Serv.*,
   406 F. App'x 671 (3rd Cir. 2011) ...................................................................19

## **Statutes**

42 U.S.C. § 2000cc–1(a)(1)–(2) ................................................................................5

9

Fed.R.Civ.P. 56(a)....................................................................................................3
Rule 56(c)...................................................................................................................4

## **Regulations**

37 Pa. Code 93.3(h)(6) .............................................................................................12

## I.   <u>Statement of the Case</u>

Plaintiff, Fernando Nunez, is a Pennsylvania state inmate.  On April 9, 2019, Plaintiff filed the operative Amended Complaint ("AC") in this case.  (Doc. 34). Remaining Defendants are Pennsylvania Department of Corrections ("Department") Secretary John Wetzel and then Department Regional Deputy Secretary Tabb Bickell.

In the AC, Plaintiff describes himself as a devout Muslim and claims that his religion rights are being violated under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in three ways.  First, he alleges that the Department' policy prohibiting conjugal visits violates his Islamic beliefs.  Specifically, he avers that he was permitted to marry in 2013, but was not permitted to consummate his marriage in accordance with his religious beliefs.  (Doc. 34 at ¶¶ 8-9).  He also seeks ongoing conjugal visits and other forms of intimacy as understood in Islamic practice to include "light talk, love expressions, touching, caressing, kissing and fondling." (Doc. 34 at ¶11).  Second, Plaintiff seeks to be able to engage in group prayer in the visiting room with his visitors.  (Doc. 34 at ¶ 68).  Third, he seeks a circumcision for religious reasons.  (Doc. 34 at ¶¶ 90-95).  It is not clear from the AC who would be responsible for payment of Plaintiff's circumcision.  (Doc. 34 at ¶¶ 90-106).

Plaintiff seeks injunctive relief in the form of "enjoining the Defendants… from enforcing   the Administrative Code regulation and Department policies at

issue, so as to not continue to substantially burden the Plaintiff's religious beliefs" and "Order the Defendants in his action to implement a family/conjugal visit program, and execute policies and practices which serve to accommodate Plaintiff's religious beliefs." (Doc. 34 at ¶ 106).

## II.    **Relevant Factual History**

Plaintiff is an individual incarcerated at the State Correctional Institution at Huntingdon ("SCI-Huntingdon") during the events alleged in this lawsuit. (Doc. 34). He is by his own assertions a devout and practicing Muslim. His claims begin in January 2015 when he requested three religious accommodations while in state prison: 1) to engage in conjugal visits with his spouse, 2) to engage in congregate prayer in private with his family during contact visits, and 3) to be ritually circumcised. (App'x at A; Doc. 34 at ¶ 15). His request for conjugal visits was denied "due to safety, security and health concerns. (App'x at A). His request for congregational private prayer was denied because the request "would not only create a safety concern, but would also pose a major distraction to families of other inmates meeting their loved ones. (App'x at A). Further, "The institution cannot provide every inmate with [a] private visiting room for congregational prayers with family members. (App'x at A). Plaintiff's request for circumcision was denied because "circumcision is an elective surgery and is not medically necessary", and also because of the costs involved for and after elective surgeries. (App'x at A).

Plaintiff filed grievance number 564319 relating to the conjugal visits issue, which was denied for the same reasons that the original accommodation was denied. It was noted that he is permitted to briefly embrace and kiss his spouse at the beginning and end of a visit. The denial was upheld on appeal at the first level, and again at the second level. (App'x at B).

Plaintiff filed grievance number 562984 relating to the private congregational prayer issue, and his grievance was denied because inmates share the visiting room and that space is not for the purpose of practicing religion. It was noted that he is permitted to quietly pray in a seated position with his guests. The denial was upheld on appeal at the first level, and again at the second level, based on the same rationale. (App'x at I).

Finally, Plaintiff filed grievance number 564054 relating to the circumcision issue; his grievance was denied because the Department does not permit elective surgeries. The denial was upheld on appeal at the first level, and again at the second level, based on the same rationale. (App'x at K).

## III.  **Standard of Review**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person

could conclude that the position of the person with the burden of proof on the disputed issue is correct. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3rd Cir. 1993).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotations omitted). "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*.

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby, Inc.*, 477 U.S. at 250.

## IV.   Statement of Questions Presented[1]

A.   Should summary judgment should be granted in Defendants' favor as to Plaintiff's conjugal visits claim because his religion is not being substantially burdened, and the Department has several compelling government interests in denying Plaintiff a private visiting room for sexual contact with his spouse?

B.   Should summary judgment be granted in Defendants' favor as to Plaintiff's congregational prayer claim because his religion is not being substantially burdened, the Department has several compelling government interests in preventing Plaintiff from having a private room with visitors, and a least restrictive alternative is available?

C.   Should summary judgment be granted in Defendants' favor as to Plaintiff's circumcision claim because the Department has compelling government interests in declining inmate requests for elective surgeries?

## V.   Arguments

Section 3 of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") creates statutory protection for inmates in the exercise of their religion, providing, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability" unless the government establishes that the burden on religion furthers a "compelling governmental interest" through the "least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc–1(a)(1)–(2). "In *Cutter v. Wilkinson,* 544 U.S. 709 (2005), the United States Supreme Court, in addressing a facial First Amendment

---

[1] All suggested answers are in the affirmative.

5

Establishment Clause challenge to this provision of RLUIPA, observed that this provision was 'the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens.'" *Thomas v. Corbett*, 90 A.3d 789, 794 (Pa. Cmwlth. 2014) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)).  H

Under RLUIPA, a substantial burden exists where: "1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3rd Cir. 2007).

Health and safety matters are compelling governmental interests under RLUIPA. *Cutter*, 544 U.S. at 725.

In regard to the least restrictive means prong, and assuming that there is an alternative available, the government must show that it has considered and rejected those means.  *Washington,* 497 F.3d at 284.

A.   Summary judgment should be granted in Defendants' favor as to Plaintiff's conjugal visits claim because his religion is not being substantially burdened, and the Department has several legitimate penological interests in denying Plaintiff a private visiting room for sexual contact with his spouse.

Plaintiff seeks to consummate his 2013 marriage and have ongoing conjugal visits with his wife in accordance with his Muslim beliefs. (Doc. 34 at ¶¶ 7-14). Specifically, Plaintiff seeks intimacy in the forms of "light talk, love expressions, touching, caressing, kissing, fondling, and sexual intercourse" to be conducted "privately, behind closed doors, away from small children and other adults." (Doc. 34 at ¶¶ 11-12). He requests that these visits take place twice a month on Saturday and Sunday. (Doc. 34 at ¶ 36).

In 2014, the issue of conjugal visits was raised before the Commonwealth Court of Pennsylvania in *Thomas v. Corbett*, 90 A.3d 789 (Pa. Cmwlth. 2014). There, the inmate made both First Amendment and RLUIPA arguments when the Department of Corrections denied his request for conjugal visits. *Id*. In relation to the constitutional claim, the Court stated: "Courts have held that a correctional authority's policy to deny conjugal visits does not deny an inmate any constitutional right." *Id*. at 794 (citing *McCray v. Sullivan,* 509 F.2d 1332, 1334 (5th Cir.1975), *cert. denied,* 423 U.S. 859 (1975); *Imprisoned Citizens Union v. Shapp,* 451 F. Supp. 893, 898–99 (E.D.Pa. 1978). On the RLUIPA claim, the Court declined to grant preliminary objections for lack of evidence. *Thomas,* 90 A.3d at 794-797. Subsequently, in 2019, the issues were decided via a Department motion for summary relief, wherein the Commonwealth Court accepted the Department's rejection of conjugal visits furthers a compelling state interest in ensuring the health

and safety of inmates and abating criminal activity."   *Thomas v. Corbett*, 458 M.D. 2013 , pp. 3-7 (Pa. Cmwlth. 2013) (App'x at G).  With respect to the lest restrictive alternatives analysis, the Court reasoned:

> Our inquiry, however, does not end here. DOC must also show that there are no genuine issues of material fact concerning its allegation that an outright ban on conjugal visits is the least restrictive means of furthering DOC's health and safety interest and its interest in abating criminal activity. Thomas argues that an outright ban is not the least restrictive means because the institution allegedly has movable homes on its property. On the other hand, DOC contends that the nature of conjugal visits requires a complete ban instead of a restriction because these visits require privacy, could spread communicable diseases, create an opportunity to bring in contraband, and may allow for the commission of crimes. Despite Thomas's contentions, we see no dispute concerning any material facts as to the least restrictive means prong. DOC has a clear responsibility to ensure the health and safety of inmates and to ensure that criminal activity is abated. DOC cannot abate crime and ensure the health and safety of inmates by permitting conjugal visits, even in a restricted manner. Any conceivable restriction, due to the inherently private nature of a conjugal visit, would still result in health and safety concerns. Accordingly, we will grant summary relief in DOC's favor with respect to the conjugal visit policy.

*Id*. at pp. 7-8.  (App'x at G).

Though this Court is not bound by Commonwealth Court decisions, the exact same reasoning applies to this case for all the Department objectives reiterated above.

Further, case law in other areas of the country strongly supports the position that Plaintiff has no right to relief as a matter of law.  The federal district court in the Eastern District of California faced a  very similar case in which a California state inmate claimed that the prison policy prohibiting those convicted of life sentences from engaging in conjugal visits violated RLUIPA.  *Owens v. Kernan*, 2016 WL 3361885 (USDC E.D. Cal. 2016).  (App'x at H).  The district court dismissed the claim, citing several cases federal court cases as follows:

> This court previously considered and rejected an inmate's claim that the denial of conjugal visits violates RLUIPA, finding that the right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration and that although the right to marriage is constitutionally protected for inmates, the right to marital privacy and conjugal visits while incarcerated is not. *Shields v. Foston*, No. 2:11-cv-0015 JAM EFB, 2013 U.S. Dist. LEXIS 95776, 2013 WL 3456964 (E. D. Cal., Jul. 9, 2013). Another court in this district adopted that analysis, reasoning as follows:
>
>> Neither the U.S. Supreme Court nor the Ninth Circuit has yet addressed whether a sincerely held religious belief necessitating conjugal visits must be accommodated under RLUIPA. In *Shields v. Foston*, No. 2:11-cv-0015 JAM EFB, 2013 U.S. Dist. LEXIS 95776, 2013 WL 3456964 (E. D. Cal. Jul. 9, 2013), the court surveyed the district court decisions addressing the question. *See Pouncil v. Tilton*, 704 F.3d 568 (9th Cir. 2012)(addressing a statute of limitations issue but not the merits in a case challenging denial of conjugal visits under RLUIPA.) *Fuller v. Cate*, 481 Fed. Appx. 413 (9th Cir. 2012)(concluding that the attachments to plaintiff's complaint demonstrated that the prohibition on conjugal visits for LWOP inmates did not substantially burden plaintiff's right to enter into a valid Islamic marriage). The lower courts that have addressed the issue appear, thus far, to uniformly conclude that such beliefs must give way to the need for institutional security.

9

*Robertson v. Kansas*, No. 07-3162-SAC, 2007 U.S. Dist. LEXIS 91266, 2007 WL 4322781 (D. Kan. Dec. 10, 2007)(summarily denying Plaintiff's claim for conjugal visits under RLUIPA because such visits would burden prison officials and present security risks); *Marsh v. Granholm*, No. 2:05-cv-134, 2006 U.S. Dist. LEXIS 59203, 2006 WL 2439760 (W.D. Mich., Aug. 22, 2006)(granting summary judgment on plaintiff's RLUIPA claim because: (1) plaintiff, a murder convict, raised particular security concerns regarding his continued incarceration, (2) plaintiff's incarceration was at odds with his request to engage in private heterosexual procreation, and (3) the denial of conjugal visits was the least restrictive means of furthering the government's interest in institutional safety).

The *Foston* court notes that courts have consistently held that loss of sexual intimacy with a spouse is simply "part and parcel" of imprisonment. *Gerber v. Hickman*, 291 F.3d 617, 620-22 [2002]; *see also Turner v. Safley*, 482 U.S. 78, 97, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)("The right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration."); *Hernandez v. Coughlin*, 18 F.3d 133, 137(2nd Cir. 1994)("[E]ven though the right to marriage is constitutionally protected for inmates, the right to marital privacy and conjugal visits while incarcerated is not."); *Lucas v. Tilton*, No. 1:08-cv-00515 AWI GSA, 2010 U.S. Dist. LEXIS 8347, 2010 WL 431737 (E.D. Cal. Feb. 2, 2010) (concluding that the balance of equities did not support plaintiff's request for a preliminary injunction allowing Plaintiff to have a conjugal visit with his wife "because the loss of intimate association is a well-known aspect of being imprisoned for conviction of a crime.").

        \*               \*               \*

That Plaintiff was denied a conjugal visit does not state a claim for relief under RLUIPA.

*Washington v. Cate*, No. 1:11-cv-00264 GSA PC, 2014 U.S. Dist. LEXIS 12402, at *4-5 (E.D. Cal. Jan. 31, 2014). Like the plaintiff in *Washington* and *Shields v. Foston*, plaintiff's claim that he was denied

a conjugal visit because of his status as a life prisoner fails to state a claim for relief under RLUIPA.

*Owens*, 2016 WL 3361885 at 203.

Defendants argue that although Plaintiff cannot have sexual contact with his spouse, he is permitted to "share a brief kiss and embrace" when meeting and departing from a visit. (App'x at C; App'x at E). The Department also permits "a brief kiss" after marriage. (App'x at D; Appx' at E). Such contact fulfills several of Plaintiff's wishes regarding showing affection and love toward his spouse, and making her feel special and desired, as outlined in his AC. (Doc. 34, generally). Thus, he is not suffering a substantial burden by not being able to engage in sex acts with her.

However, assuming that a substantial burden exists for purposes of this analysis, the Department has several legitimate penological interests in preventing Plaintiff from doing so. First, the Department is responsible for the safety and security of all inmates, which includes preventing contraband from entering the prisons. Plaintiff has shown himself to pose a direct threat regarding introduction of contraband into the Department. Additionally, it would be very difficult to monitor whether any contraband was being passed between the parties during long kisses, long embraces, and/or sexual acts. (App'x at E).

Second, as a related issue, Plaintiff could not engage in sexual acts in the same visiting room where other visits are taking place. This means that he would need to

be afforded his own private room for the conjugal visit.  If this Plaintiff is granted such an accommodation, certainly all inmates would expect the same, and the Department simply does not have the space to accommodate such requests.  (App'x at E).

Third, the needs of other inmates are also a legitimate penological concern for the Department.  Visiting room areas in the prison are a part of the planning process and are large in nature such that several visits can be going on at one time.  Plaintiff could not engage in sexual acts in the same visiting room where other visits are taking place—he would need a private room for the visit.  (App'x at E).

In Pennsylvania, all contact visits in a prison are to take place under official supervision.  37 Pa. Code 93.3(h)(6).  This means that a corrections officer would need to either supervise or record (or both) the sexual acts of others, so the visit would no longer be private and the corrections officer would be subjected to a very precarious situation.  Space and time for visitation at the Department is limited.  At the State Correctional Institution at Huntingdon, where Plaintiff is located, the visiting hours are from 8:00am to 8:00pm, 7 days per week.  No prison could accommodate a private room for all inmates requesting conjugal visits during visiting hours on any given day.  (App'x at E).

From a different perspective, the Department is responsible for the health of inmates to the extent that can be controlled.  Permitting inmates to have sexual

contact with visitors increases the likelihood that sexually transmittable infections (STIs) will be introduced into the prisons, which it and of itself leads to a host of other problems.  (App'x at F).

Particularly concerning STIs in an institutional setting include: Hepatitis, HIV, Syphilis, Herpes, Chlamydia and Gonorrhea.  STIs can often be difficult to detect by even the infected individual themselves.  Increased STI rates in the institutions will result in medical issues for inmates.  STIs can often be very contagious and some can last a lifetime.  STIs in particular can cause cancer, infertility, and even death.  Hepatitis B and Hepatitis C in particular can cause permanent liver damage.  If gone undetected, many can cause permanent damage and even death.  To complicate matters, STIs often are not detected unless an inmate self-discloses.   (App'x at F).

Increased STI rates in the institutions would be detrimental to the population and will result in high costs of medical treatment, if treatment is even an option.  There would be no way for the Department to ensure that safe sex was occurring during a conjugal visit in order to safeguard that STIs were not being passed from one participant to the other.  This in turn would result in more medical issues for inmates, and more costs for the Department in the treatment of those issues.  Denying Plaintiff's request for conjugal visits serves the legitimate penological interest of

preventing STIs from entering and spreading around the prison population.  (App'x at F).

Finally, the Department would have no way of ensuring that the sexual encounters were consensual at any given moment, which could result in a crime being committed at the prison.  (App'x at F).  Merely because Plaintiff argues that he has a healthy relationship with his spouse does not make it so on a particular visit. Denying Plaintiff's request for conjugal visits serves the legitimate penological interest of preventing sexual assaults on government property.  (App'x at F).

As explained above, the RLUIPA analysis includes whether the Department has considered and rejected a least restrictive alternative, if one is available.  As the Commonwealth Court reasoned, there really is no least restrictive alternative to Plaintiff's request for conjugal visits.  The Department cannot safely provide that for all the reasons indicated above.

Defendants are entitled to summary judgment in relation to Plaintiff's RLUIPA claims regarding the denial of sexual contact visits with his spouse in a private room.

     B.     Summary judgment should be granted in Defendants' favor as to Plaintiff's congregational prayer claim because his religion is not being substantially burdened, the Department has several compelling government interests in preventing Plaintiff from having a private room with visitors, and a least restrictive alternative is available.

Plaintiff seeks to engage in congregational prayer with visitors in a private visiting room. (Doc. 34 at ¶¶ 65-66). The prayer would include several prostrations and recitations throughout. (Doc. 34 at ¶ 67). When he sought to engage in those acts via a religious accommodation request and then a grievance, Plaintiff's request for congregational prayer in a private room was denied, but he was informed that he would be permitted to engage in a quiet, seated prayer with his visitors in order to balance his needs with those of other inmates and visitors using the same designated visiting room. (App'x at A; App'x at I).

Plaintiff does not allege that he cannot pray, nor is he averring that he cannot pray with visitors. What he is saying is that he cannot do it in the exact way he wishes, but rather, he needs a private room with an area for group prostration. This simply is not required by RLUIPA. Plaintiff's ability to practice his religion is not substantially burdened by the inability to have a private room for congregational prayer. He can still pray as he wishes in the privacy of his cell, or with visitors quietly in seated positions in the designated visiting area.

Even assuming *arguendo* that he suffers a substantial burden by the restrictions currently in place, the Department has several legitimate penological interests in not permitting congregational prayer sessions between inmates and visitors. For the reasons already mentioned above in relation to Plaintiff's first request, he poses a specific security concern when it comes to contraband being

brought into the prison.  Additionally, it would be very difficult for security personnel to observe whether contraband is being passed from one person to another if they are in a private room, prostrating themselves, and able to conceal items much easier than in a seated position next to one another in the already-designated visiting room.  (App'x at E).

The needs of other inmates are also a legitimate penological concern for the Department.  Visiting room areas in the prison are a part of the planning process and are large in nature such that several visits can be going on at one time.  If Plaintiff engages in his congregate prayer in the way he wishes, no one else can reasonably meet at the same time given the noise and distraction.  That takes away visiting time from other inmates, and converts a currently neutral meeting space into one being used for religious purposes.  (App'x at E).  Then, of course, the Department has a new problem relating to one religion being given preference over another, receiving more prayer time than another, etc.

Scarcity of resources is a concern as well—if Plaintiff were to be given a private room to engage in visits and group prayers, other inmates would surely expect the same treatment and the Department would be obliged to provide such an accommodation for every inmate seeking group prayer with visitors.  All of these requests would, of necessity, for be for the same basic time frame when visiting hours are permitted at SCI-Huntingdon from 8:00am to 8:00pm each day.  This

would result in the need to supply a virtually limitless number of rooms at or near the same time, and to staff each one with security personnel.  (App'x at E).  If other inmates were not granted such an opportunity but Plaintiff was, feelings of resentment could manifest into assaults very quickly in the prison setting.  (App'x at E).

In addition, inmates would likely demand/expect related accoutrements, *i.e.*, prayer rugs, crosses, kneeling benches, ceremonial pipes, prayer books, meditation pillows, etc. Such an approach is simply unworkable, and under RLUIPA need not be accommodated due to the compelling governmental interest of prison security and scarcity of resources.  (App'x at E).

Importantly, The Department considered, and Plaintiff was ultimately afforded, a least restrictive alternative with which to engage in prayer with his visitors.  (App'x at A; App'x at I).  He is permitted to pray with them sitting down quietly in the visiting rooms.  In the prison context, this is an adequate alternative.

Undersigned counsel believes that this is an issue of first impression for this Court, as well as across the country.  However, the US District Court of Connecticut reviewed a case where an inmate requested congregate prayer with other Muslim inmates five times per day pursuant to RLUIPA.  *Vega v. Lantz*, 2009 WL 3157586 (D.C. Conn. 2009) (App'x at J).  In that case, the state prison had a regulation that permitted its inmates to engage in one congregate prayer per week.  *Id*. at 2.  In

support of its denial, the prison argued compelling government interests of "prison security and order".  *Id*. at 10.  The Court agreed with the prison, holding:

> [T]he regulation is in furtherance of compelling government interests of prison security and order and is the least restrictive means of furthering that compelling government interest. The defendants permit the plaintiff to pray in his cell, and their policy provides that weekly congregate prayer be   held   for   each   religion. RLUIPA does not require officials to make the burdensome alterations to prison scheduling and facility use that the plaintiff seeks, particularly in light of the security concerns that the defendants identify. The defendants' motion for summary judgment is granted as to this RLUIPA claim."

*Id*. at 10.

Defendants here have the same concerns, and then some, given Plaintiff's request to engage in congregate prayer with visitors.  Similarly, Plaintiff is permitted to pray in his cell in furtherance of the practice of his religion.  (App'x at A).  As already mentioned, he is also permitted to pray quietly with visitors in the visiting room.

Judgment should be granted in favor of Defendants on the RLUIPA claim relating to private congregational prayer with visitors.

    C.    Summary judgment should be granted in Defendants' favor as to Plaintiff's circumcision claim because the Department has compelling government interests in declining inmate requests for elective surgeries.

Plaintiff indicates that his religion requires that converts to Islam must get ritually circumcised. (Doc. 34 at ¶¶ 90-97).  Plaintiff acknowledges that the circumcision surgery is not medically necessary, and his request for the surgery on

18

religious grounds was denied.  (See App'x at I; Doc. 34 at ¶¶ 90-97).  Though it is unclear from Plaintiff's accommodation request who he wants to pay for the cost of a circumcision surgery, it is clear from the Amended Complaint that he expects the Department to pay for the procedure.  (Doc. 34 at ¶¶ 101-103).

In the denial letter, the Department indicated, "It is unreasonable for the Department to assume the costs of elective surgery for all inmates, including the medical expenses which it would incur if medical complications ensued following elective surgery."  (App'x at A).  The Department also cited to Policy 13.2.1 as indicative that the Department does not pay for cosmetic surgeries.  (App'x at A; App'x at K).

"Prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow v. Prison Health Serv.*, 406 F. App'x 671, 674 (3rd Cir. 2011) (citing *Reynolds v. Wagner,* 128 F.3d 166, 175 (3rd Cir. 1997) and holding that the 8th Amendment was not violated by prison declining to pay for hernia that did not medically require surgery).  (App'x at J).

In a recent case before this district court in 2019, *Cowher v. Pike County Correctional Facility*, a federal inmate argued that the DOC Defendants were deliberately indifferent to his medical needs when they denied his request for back or hip surgery because it was not medically necessary bur rather elective in nature.

*Cowher v. Pike County Correctional Facility*, 2019 WL 3302415 (USMD Pa. 2019) (unreported) (App'x at K).  The Court held that since the medical professionals provided care and indicated that the procedure was not necessary, it was not cruel and unusual to decline the inmate's request for surgery.  *Id*. at 13-15.

No Court has held that a request for cosmetic surgery sought for religious reasons under RLUIPA must be provided.  There are legitimate penological reasons for this. As explained in by the United States District Court of Connecticut in *Vega v. Lantz*, where an inmate sought a circumcision for religious reasons:

> The DOC's preclusion of elective surgeries for prisoners is reasonably related to legitimate penological interests. Elective surgery could alter a prisoner's identifying characteristics. It would be eminently unreasonable to allocate taxpayer money to elective surgeries for prisoners, and permitting prisoners with means to purchase elective surgery would sow discord by emphasizing wealth disparities. Finally, remaining uncircumcised does not prevent plaintiff from taking advantage of other available means of religious exercise such as prayer and study.

*Vega v. Lantz*, 2013 WL 6191855 (D.C. Conn. 2013) (App'x at L).  Based on this reasoning, the *Vega* Court concluded that corrections officials had met the burden to show a compelling governmental interest to deny religious circumcisions.  The United States District Court of the Eastern District of California has held the same. *Fields v. Paramo*, 2019 WL 4640502 (E.D. Ca. 2019) (applying the *Turner* analysis and finding in the prison's favor on all four prongs).  (App'x at M).

Defendants concede here that the denial of Plaintiff's request to be circumcised with government funds places a substantial burden on his religious exercise. However, prison resources do not allow for inmates to be afforded with government funds to pay for cosmetic surgeries.

The Department provides medically necessary care to all inmates pursuant to DOC Policy 13.2.1, Section 1(A). (App'x at F; App'x at L). Pennsylvania State Correctional Institutions are not currently equipped to conduct medically-necessary surgeries, so all surgeries occur off site. When an inmate has to be transported to an outside medical facility for a medical procedure, he must be accompanied by at least two or more security staff, depending on the inmate Custody Level. The Department pays for the cost of medically-necessary surgeries. The Department provides some medical care to inmates on a case-by-case basis pursuant to Policy 13.2.1, Section 1(B). There are some medical services that the Department does not provide pursuant to Policy 13.2.1, Section 1(C). Department policy 13.2.1, Section 1(C)(1) indicates: "Medical services not provided by the Department include, but are not limited to…cosmetic surgery or services." (App'x at F; App'x at L).

Circumcision is considered a cosmetic surgery, sometimes referred to as elective surgery. Circumcision surgery is often done to increase sexual gratification. (App'x at F).

21

Traditional circumcision surgery generally costs approximately $3,500.00. (App'x at F).

Plaintiff indicates that he wants to be ritually circumcised in order to keep his genital area clean for religious purposes.  Proper hygiene techniques will allow for clean genital areas without the need to be circumcised.  Availability of resources in the community for cosmetic surgery is stretched very thin at the present time because of the COVID pandemic.  If Plaintiff were able to get the procedure done, he would then come back into the prison with the potential for further complications, which the Department would have to pay for.  Risks of complications include: bleeding, infection, and wound dehiscence (opening up of the wound after surgery is finished), Glans hyperesthesia, skin bridges and meatal stenosis.  (App'x at F).

Denying Plaintiff's request for ritual circumcision serves the legitimate penological interest of conserving government resources, including the cost of surgery, hospital services, security transportation staff to and from the hospital, and the cost of any potential post-surgery complications.   (App'x at F).

Plaintiff argues that the cosmetic/elective aspect of the surgery is inapposite to whether it is required on religious grounds.  But the two are necessarily intertwined based on Plaintiff's expectation that the government will fund the cost of his desired cosmetic procedure.

## **CONCLUSION**

Based on the foregoing reasoning, this Court should grant the Motion for Summary Judgment in favor of Defendants.

Respectfully submitted,

By:    /s/ Abby N. Trovinger
       *Abby N. Trovinger, Assistant Counsel*
       Attorney I.D. No. PA308329
       PA Department of Corrections
       Office of Chief Counsel
       1920 Technology Parkway
       Mechanicsburg, PA  17050

Dated:  June 30, 2021

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FERNANDO NUNEZ,<br>Plaintiff | : | |
| | : | CIVIL ACTION NO. 3:15-1573 |
| v. | : | (JUDGE JENNIFER P. WILSON) |
| TOM W. WOLF, *et al.*,<br>Defendants | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am providing a true and correct copy of the foregoing Brief in Support of Motion for Summary Judgment for HAND-DELIVERY to the person below:

Fernando Nunez, FM8959
SCI-Mahanoy

By:  /s/ Abby N. Trovinger
Abby N. Trovinger, Assistant Counsel
Attorney ID No. PA308329
Pa. Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050
717.728.7763

Dated: June 30, 2021