**FILED**
HARRISBURG, PA

JUL 2 8 2022

PER _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NO. 3:15-CV-1573

FERNANDO NUNEZ, JR.

Plaintiff,

Vs.

TOM W. WOLF, et al.,

Defendants.

---

PLAINTIFF REPLY BRIEF TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

---

Date: July 15, 2022

Fernando Nunez Jr.
I.D.# FM8959
SCI Mahanoy
301 Gray Line Drive
Frackville, PA 17931

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| Table of Citations | ii |
| Counter Statement of The Case | 1 |
| Counter Statement of Relevant Factual History | 2 |
| Standard of Review | 2 |
| Counter Statement of Questions Presented | 4 |
| Argument | 4 |
| Conclusion | 27 |
| Verification | 28 |
| Certificate of Service | 29 |

i

TABLE OF CITATIONS

CASES                                                                          PAGE

Anderson v. Liberty Lobby, Inc. 477 U.S. 242 (1986)                            2, 3

Celotext Corp. v. Catrett, 477 U.S. 317 (1986)                                 2

Christopher v. Smithkline Beecham Corp., 132 S.Ct 2156 (2012)                  14

Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,
508 U.S. 520 (1983)                                                            19

Cutter v. Wilkinson, 125 S.Ct 2113 (2005)                                      4

Holt v. Hobbs, 135 S.Ct 853 (2015)                                             5-19

Paladino v. Newsome, 885 F.3d 203 (3d Cir.2018)                                9

Ramirez v. Collier, 142 S.Ct 1264 (2021)                               5, 9, 16, 18

Shakur v. Schriro, 514 F.3d 878 (9th Cir.2008)                                 17

Smith v. City of Allentown, 589 F.3d 684 (3d Cir.2009)                         3

Thomas v. Corbett, 206 A.3d 686 (Pa.Cmwlth.Ct.2019)                            11

Washington v. Klem, 497 F.3d 272 (3d Cir.2007)                      4-5, 8-9, 15, 17

Waterman v. Farmer, 183 F.3d 208 (3d Cir.1999)                                 10

Williams v. Wetzel, 222 A.3d 49 (Pa.Cmwlth.Ct.2019)                            14

Williams-Yulee v. Fla.Bar.,135 S.Ct 1656 (2015)                                13

Yellowbear v. Lampert, 741 F.3d 48 (10th Cir.2014)                             13

Knott v. Mclaughlin, 2019 U.S.Dist.LEXIS 51364 (MD.Ga.Mar.27, 2019)

Williams v. Beard, 2016 U.S.Dist.LEXIS 65245 (MD.Pa.May 18,2016)

Cannon v. Moore, 2021 U.S.Dist,LEXIS 11883 (MD.Pa.Jan 21,2021)

Vega v. Lantz, 2013 U.S.Dist.LEXIS 167797 (D.Conn.Nov 26,2013)

Tormasi v. Lanigan, 363 F.Supp.3d 525 (D.N.J.Jan 28,2019)

REGULATION

37 Pa.Code §93.3(h)(6)                                                         14

| STATUTES | PAGES |
|---|---|
| 42 U.S.C. §2000cc-1(a)(1)-(2) | 5, 12 |
| 42 U.S.C. §2000cc-5(7)(A) | 4 |

| RULES | |
|---|---|
| Fed.R.Civ.P. 56 | 2-3, 17 |
| Fed.R.E. 210(f) | 11 |

iii

I. Counter Statement of The Case

Plaintiff, Fernando Nunez Jr.,("Nunez"), is state prisoner confined within the Pennsylvania Department of Corrections ("Department"). He filed the operative amended complaint ("AC") in this case on April 9, 2019. (Doc 34). Remaining defendants' are the Secretary of the Department, George Little, and then regional deputy Secretary Tabb Bickell. In his AC, Nunez asserted that his religious exercise is being substantially burdened, in three ways, by several policies of the Department, in violation of The Religious Land Use Institutionalized Persons Act ("RLUIPA"). First, he alleges the Departments' policy prohibiting private conjugal visits with his spouse violates his sincere Islamic beliefs. Specifically, he avers that he was permitted to marry in 2013, but was prohibited from consummating his marriage consistent with his religious beliefs. (Doc 34 at ¶¶ 7-10). He is seeking on-going conjugal visits to allow them to privately engage in intimate acts with one another consistent with Islamic practice. Such as: light talk, love expressions, touching, caressing, kissing, fondling, and sexual intercourse. (Doc 34 at ¶¶ 11-13). Second, he is seeking to be able to engage in group prayer in a designated space in the visiting room with his visitors. (Doc 34 at ¶ 68 & ¶ 73). Third, he seeks a circumcision for religious reasons and to have the defendants' incur the costs for the surgery. (Doc 34 at ¶¶ 90-95, ¶ 99 & ¶ 101).

Nunez is seeking injunctive relief in the form of enjoining the defendants from enforcing the Department policies at issue so as to not continue to substantially burden his sincere religious beliefs and order the defendants in this action to implement a family/conjugal visit program, and execute policies and practices that will accommodate his religious beliefs. (Doc 34 at ¶ 106).

1

II. <u>Counter Statement of Relevant Factual History</u>

Nunez is a devout Muslim who converted to the Islamic faith in 2003. (Doc 34 at ¶ 7). When incarcerated at SCI Huntingdon he submitted three religious accommodation requests ("RAR") for: (1) private conjugal visits with his spouse; (2) to congregate in prayer with his visitors during contact visits, and (3) to be circumcised. (Doc 34 at ¶ 15). His RAR for conjugal visits was denied due to safety, security, and health concerns. (Plt's App'x at 29). His RAR for congregational prayers with his visitors was denied because the request creates a safety concern, pose a major distraction to families of other inmates, and lack of space to accommodate every inmate. <u>Id</u>. Lastly, his RAR for circumcision was denied because it is medically unecessary, considered elective surgery, and costly. <u>Id</u>. Nunez filed seperate grievances for each denial and all of them were denied for the same reasons noted in defendant Bickell's April 6, 2015 denial notification. (Doc 80, Defs' App'x at B, I, K).

III. <u>Standard of Review</u>

Summary judgment is only appropriate where the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Facts that could alter the outcome are "material facts", and disputes are "genuine" if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct. <u>Anderson v. Liberty Lobby, Inc.</u>,477 U.S. 242, 255 (1986). The initial burden is on the party seeking summary judgment to identify evidence that demonstrates an absence of a genuine issue of material fact by citing to particular parts of materials in the record to satisfy its burden under Fed.R.Civ.P. 56(c)(1)(A). <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

2

After the party moves for summary judgment, the nonmoving party must answer by setting forth genuine factual issues that can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. Anderson, supra, at 250. This can be shown by showing that the materials cited by the defendants do not establish the absence of a genuine dispute. Fed.R.Civ.P. 56(c)(1)(A)-(B). Furthermore, a party opposing a motion for summary judgment must comply with Local Rule 56.1. If a party fails to properly support an assertion of fact, or address another party's assertion of fact, the court may consider the fact undisputed for the purpose of the motion. Fed.R.Civ.P. 56(e)(2). In ruling on a motion for summary judgment, the court must use the same evidentiary standard that would apply to trial. Anderson, supra, at 252. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed.R.Civ.P. 56(c)(2). Inadmissible hearsay should not be considered during summary judgment. Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir.2009). Declarations used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters stated. Fed.R.Civ.P. 56(c)(4). Declarations must also contain facts demonstrating a basis for the declarant's claim that the statements are based on their personal knowledge. Maldonado v. Ramirez, 757 F.2d 48, 50-51 (3d Cir.1985). Conclusory, self-serving declarations lacking in specific fact, have no probative value and are insufficient. Paladino v. Newsome, 885 F.3d 203, 209 (3d Cir.2018).

3

## IV. Counter Statements of Questions Presented

1. DEFENDANTS SHOULD BE DENIED SUMMARY JUDGMENT ON NUNEZ'S CONJUGAL VISIT CLAIM; FACTS ARE IN DISPUTE AS TO WHETHER THE DEFENDANTS MET THEIR BURDEN IN PROVING A COMPELLING GOVERNMENTAL INTEREST AND LEAST RESTRICTIVE MEANS TO JUSTIFY ITS POLICY PROHIBITING PRIVATE CONJUGAL VISITS.

2. DEFENDANTS SHOULD BE DENIED SUMMARY JUDGMENT ON NUNEZ'S CONGREGATIONAL PRAYER CLAIM; FACTS ARE IN DISPUTE AS TO WHETHER THE DEFENDANTS MET THEIR BURDEN IN PROVING ITS ALLEGED COMPELLING GOVERNMENT INTERESTS AND LEAST RESTRICTIVE MEANS TO JUSTIFY ITS POLICY PROHIBITING NUNEZ FROM CONGREGATING IN PRAYER WITH HIS VISITORS DURING A CONTACT VISIT.

3. DEFENDANTS SHOULD BE DENIED SUMMARY JUDGMENT ON NUNEZ CIRCUMCISION CLAIM BECAUSE GENUINE FACTS ARE IN DISPUTE AS TO WHETHER THE DEFENDANTS HAS MET THEIR BURDEN IN PROVING A COMPELLING INTEREST IN DECLINING NUNEZ CIRCUMCISION SURGERY.

## V. Arguments

To prevail on his RLUIPA claims Nunez must establish his religious belief is sincerely held and that the defendants actions created a "substantial burden" on the exercise of his religious beliefs. Cutter v. Wilkinson, 125 S.Ct 2113, 2124 (2005). "Religious exercise" is defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."42 U.S.C. §2000cc-5(7)(A) Nunez has the initial burden of proving that his religious exercise has been burdened, and that the burden is "substantial". In Washington v. Klem, 497 F.3d 272 (3d Cir.2007) the Third Circuit Court of Appeals held that:

> [a] substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. Id. at 280.

RLUIPA's substantial burden inquiry asks whether the government has substantially burdened a religious exercise, not whether the RLUIPA claimant is able to engage in other forms of religious exercise. Holt v. Hobbs, 135 S.Ct 853, 862 (2015). If Nunez proves that the government substantially burdened his religious beliefs, the burden then flips and the government must demonstrate that imposition of the burden on Nunez is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. §2000cc-1(a). Under RLUIPA, the government cannot discharge this burden by pointing to "broadly formulated interest." Ramirez v. Collier, 142 S.Ct 1264, 1278 (2021). It must instead "demonstrate that the compelling interest test is satisfied through application of the challenged law to the particular claimant whose sincere exercise of religion is being substantially burdened. Id. A conclusory statement is not enough. Washington, supra, at 283. And a Court can not defer to a government's mere "conjecture" or "speculation". Ramirez, supra, at 1280 (speculation is insufficient to satisfy the government's burden, and fails to engage in the sort of case-by-case analysis that RLUIPA requires). In this case, the government defendants has not carried its burden under RLUIPA "demonstrating" that they have a compelling interest in refusing to grant all three of Nunez's RAR's. And they certainly failed to prove that refusing those RAR's is the least restrictive means of furthering any compelling interest.

<u>PRIVATE CONJUGAL VISITS</u>

A. DEFENDANTS SHOULD BE DENIED SUMMARY JUDGMENT ON NUNEZ'S CONJUGAL VISITS CLAIM BECAUSE GENUINE FACTS ARE IN DISPUTE AS TO WHETHER THE DEFENDANTS MET THEIR BURDEN IN PROVING A COMPELLING GOVERNMENT INTEREST OR LEAST RESTRICTIVE MEANS TO JUSTIFY ITS POLICY PROHIBITING PRIVATE CONJUGAL VISITS.

From the outset, it is worth noting here that the defendants have not challenged the sincerity Of Nunez's religious beliefs or practices. But they do argue that his religious exerise to be intimate with his spouse is not being substantially burdened, despite his inability to have sexual contact with her, because the Department's marriage and visiting policies do permit him and his spouse to share a brief kiss and embrace after marriage. (Doc 80 at Def's App'x C,  DC-ADM 812 Section 1.D.1 ; App'x D, DC-ADM 821 Section 2.B.5). In so arguing, they ignore the fact that such an intimate act like "kissing and embracing" is an intimate act itslef which Nunez sincerly believes must be done in private, behind closed doors, away from small children and other adults. (Plt's App'x at 1, ¶¶ 5-6). And further ignores   : Nunez sincere beliefs that he must consummate his marriage with his spouse by first leading a congregational prayer with her, BEFORE, he can even be intimate with her. (Doc 34 at ¶¶ 10). Furthermore, because Department  policies prohibit Nunez from having sexual contact with his spouse after marriage, he is being compelled to modify his religious beliefs by practicing celibacy. A sinful act prohibited in Islam. (Plt's App'x at 1, ¶ 2). Yet, the defendants would have this court believe allowing Nunez to engage in an intimate act like "kissing or embracing" his wife after their marriage and contact visits - when meeting and departing - is acceptable. It is not!

Nunez and his spouse is prohibited from even engaging in the smallest form of intimacy such as snuggling against one another, holding hands or grooming one another. Nunez can't even wipe away his spouse's tears or whisper in her ear to avoid other inmates and visitors from over hearing his light talk with her about intimate and personal matters. (Plt's App'x at 1, ¶ 23). If Nunez were to do any of the above intimate acts during a contact visit, he risks having his visit terminated, suspended, or receiving a misconduct. (Plt's App'x at 35, page 7).

The Department's marriage and visiting policies certainly places a substantial burden on Nunez's sincere religious beliefs and practices because if he contravenes those policies and engage in intimate acts with his spouse during a contact visit, he will face disciplinary action. The defendants policies therefore puts substantial pressure upon Nunez to modify his religious exercise in such a way as to substantially burden his religious exercise. Holt, supra, at 862 (A prison policy that puts substantial pressure on an inmate to modify his religious exercise under threat of disciplinary action substantially burdens one's religious exercise under RLUIPA).

Notwithstanding, the defendants argues, in the alternative, that they have several legitimate penological interest in preventing Nunez from having private conjugal visits. None of which they proved to be "compelling governmental interests", because they merely allege hypothetical concerns of security, health, and safety, without demonstrating how the policies at issue is satisfied when applying their asserted "compelling interest" to Nunez. As explained in Holt, supra, RLUIPA requires a reviewing Court to scrutinize the asserted harm of granting specific exemptions to a particular religious claimants and to look to the marginal interest in enforcing the challenged government action in that particular context. Holt, supra, at 863. In this case, that means the enforcement of the Department's policies categorically banning conjugal visits. Defendants here argue that placing a categorial ban on private conjugal visits serves a general in prison security, safety, and health. And that there is really no least restrictive alternative to Nunez's request for private conjugal visits. Nunez will address each of their broadly formulated interest infra.

## 1. Security

It is simply insufficient to permit prison officials to defeat a RLUIPA claim merely by asserting a general interest in prison security. Of course prison officials have an interest in security, but that is not the question. Invocation of such "broadly formulated interest," standing alone is not enough. Washington, supra, 497 F.3d at 283 (Even in light of deference to prison authorities, the mere assertion of security or health reasons is not enough for the Government to satisfy the compelling governmental interest requirement). RLUIPA contemplates a "more focused" inquiry and "requires the Government to demonstrate that the compelling interst test is satisfied through application of the challenged law to the person" - the particular claimant whose sincere exercise of religion is being substantially burdened. Holt, supra, 135 S.Ct at 863. In otherwords, the question is whether the defendants' categorical ban on private conjugal visits is the least restrictive means of furthering a compelling interest. In this case, the defendants has argued that prohibiting private conjugal visits is necessary to prevent the smuggling of contraband into the Department and goes on to suggest that it would be very difficult to monitor whether any contraband was being passed between the parties during long kisses, long embraces, and/or sexual acts. In attempt to substantiate its security concern, they have appended the declaration of the Chief of Security, Scott Woodring, (Doc 80 Def's App'x at E), who merely expresses hypothetical ways in which contraband can be passed between inmates and visitors. He offers no fact based record evidence that Nunez himself or his spouse has smuggled contraband into the Department or that Nunez or his spouse actually is a threat to security. Nunez, however, has explicitly stated in his declaration that his spouse has never been prevented from visiting him and she has never posed a threat to security so as to prohibit her from visiting him, and he has never been

issued a prison charge for smuggling drugs into any prison. Nor has he ever been issued a prison misconduct for violating any visiting policy or rule. (Plt's App'x at 1, ¶ 25 and ¶ 30). Therefore, the defendants argument and reliance on Woodring's declaration comes down to conjecture regarding what an inmate, in general, might do in some future case if private conjugal visits were allowed. The Supreme Court in Ramirez has rejected such hypothetical fears. While noting,"Such speculation is insufficient to satisfy [defendants] burden, and fails to engage in the sort of case-by-case analysis the RLUIPA requires. Ramirez, 142 S.Ct at 1280. Here, Nunez is seeking private conjugal visits with his spouse. Not some girlfriend or random friend. The defendants hypothetical fears of what some random inmate or visitor, in general, might do is simply irrelevant. That is because Nunez's RLUIPA claim must be evaluated in light of the specific concerns presented by Nunez as an individual. Holt, supra, 135 S.Ct at 863 (RLUIPA requires Courts to scrutinize the asserted harm of granting specific exemptions to particular religious claimants and look to the mariginal interest in enforcing the challenged government action in that particular context). Contrary to what defendants would have this court believe, Nunez does not pose a direct threat regarding the introduction of contraband into the Department. They have presented no direct or admissible evidence to substantiate that assertion other than the vague conslusory statement made in Woodring's declaration. (Doc 80 at ¶ 11, ¶ 21 and ¶ 30). That is not enough. Washington, supra, 497 F.3d at 283 (Noting even in light of the substantial deference given to prison authorities, the mere assertion of security and conclusory statement is not enough to satisfy defendants burden under RLUIPA). Nor, is it sufficient evidence during summary judgment. Paladino v. Newsome, 885 F.3d 203, 209 (3d Cir.2018)(self-serving statments that do not point to specific facts is insufficient to survive summary judgment). Indeed, such a vague conclusory

statement, is not even supported by a factual evidence in the summary judgment record. Woodring's declaration, is merely a general hypothesis of what Defendants believe might be true. <u>Waterman v. Farmer</u>, 183 F.3d 208 (3d Cir.1999)(deference to the decisions that prison officials make based on the facts, but not their statements of what the facts are). Defendants' know full well that drugs and other contraband are smuggled into its facilities in a variety of ways, (Plt's App'x at 30), but by far, its mainly smuggled into its prison by Department staff. (Plt's App'x at 38, page 3-4, 7-8). And also by incoming mail. (Plt's App'x at 16 and 23). defendants' have all publicly stated that,"The safety and security of staff and inmates is paramount to the Department." (Plt's App'x at 21, page 2/11). And further stated "[a]ny risk of drugs entering a prison is too much. Having drugs come in and having our staff exposed and inmates overdose is unacceptable...We'll use whatever means necessary to stop that." (Plt's App'x at 38, page 3). Yet, they have not terminated contact visits. (Plt's App'x at 24-25). But has added security measures such as doubling all staff in visit rooms, body scanners, and Ion scanners. (Plt's App'x at 30, ¶ 3, ¶ 5, and ¶ 7-8 ; Also see App'x 1, ¶ 10, ¶ 16). However, unlike inmates, Department staff are not required to pass through a body scanner before entering any Department facility. Although the Defendants proclaimed objectives are to stop the flow of contraband. (Plt's App'x at 16, page 66-67; And App'x 38)

Defendants go on to rely on Woodring's declaration to defend its marriage and visiting policies that limits physical contact. Reasoning, that denying Nunez request for conjugal visits serves the legitimate penological interest of preventing contraband from entering the prison via private contact visits. (Doc 80 Def's App'x at E, ¶ 21). But as already noted above, those assertions amount to nothing more than conjecture and speculation that has not been substantiated by any facts or evidence.

Nunez on the other hand introduces comments made by the defendants' to the general public and news media detailing the steps the Department has taken to combat the smuggling of drugs and other contraband into its prisons. (Plt's App'x at 21, page 2/11 - 5/11; App'x at 22, page 9/11; App'x at 30). This Court can take judicial notice of such information under Fed.R.E. 210(f) because it suggest the technological advances made by the Department are sufficiently adequate to address its security concerns in a least restrictive way to combat the smuggling of drugs and other contraband from entering its visiting rooms throughout all their prisons. A point of fact never argued or even considered in the case of Thomas v. Corbett, 206 A.3d 686 (Pa.Cmwlth.2019).

In response to Nunez's interrogatory responses defendants stated that requiring Nunez's spouse to pass through a body scanner, before every conjugal visit, will not satisfy their security concerns. (Plt's App'x at 14, ¶ 20 ; App'x at 15, ¶ 3). But they did not elaborate why. But they did admit that they did not consider or review any documented evidence - other than Nunez's RAR and Department policy - when denying Nunez's RAR for conjugal visits. (Plt's App'x at 14, ¶ 11 & ¶ 23).

Installing body scanners in all its prisons serves as a least restrictive means of achieving the Departments desired goal of stopping drugs and other contraband from entering its prisons through the contact visiting rooms. And Nunez suggest that the Department's current visiting policies now in place is sufficient to serve as a least restrictive means. Indeed, full body scanners have been installed in many prisons across the nation to detect and stop the flow of drugs and contraband from entering its prisons. (Plt's App'x 18). A fact, defendants themselves recognized when announcing its findings to the public. (Plt's App'x at 30).

At SCI Mahanoy, a Custody Level 3 ("CL-3") prison, where Nunez is confined currently requires ALL inmates to be stripped searched before every contact visit consistent with Department policy DC-ADM 203, (Plt's App'x at 6), and given clean visiting clothes prior to each visit. (Plt's App'x at 9, page 17). After every contact visit, ALL inmates must pass through a full body scanner and then stripped searched for contraband before being allowed to return back to their housing unit. (Plt'a App'x at 1, ¶¶ 10-11 & ¶ 17). Nunez suggests that these security practices are sufficient to satisfy the Departments security concerns in a way that is least restrictive. Similar to other prisons across the nation. The defendants failure to prove that its marriage and visiting policies is the least restrictive fails to satisfy RLUIPA's mandate under 42 U.S.C. §2000cc-1(a).

Indeed, the Department's contact visitation policy also proves to be substantially underinclusive, because it allows small children, (5 years or younger) to be held by an inmate on his/her lap, for an unspecified amount of time. (Plt's App'x at 35, page 5). But Department policy prohibits Nunez and his spouse from snuggling, holding hands, embracing eachother for long periods of time, or wipe away eachothers tears. (Plt's App'x at 1, ¶ 9, ¶ 23-24 and; App'x at 35, page 7). It is difficult to reconcile how allowing a small child to sit on an inmate's lap, for an unspecified amount of time, is less of a security concern than allowing Nunez and his spouse to snuggle, hold hands, or embrace one another (beyond the meeting and departing period). Surely, drugs and other contraband can just as likely be passed from a small child to an inmate no different from any other adult visitor. Which is exactly what the defendants "speculate" what would happen if they allow Nunez and his spouse to engage in even the smallest form of intimacy like long embraces. (Doc 78 at page 11).

In his declaration Nunez has asserted that light talk, love expressions, touching, and caressing are all small forms of intimacy, (Plt's App'x at 1, ¶ 6) and therefore considered a religious practice under Islam. (Plt's App'x at 1, ¶ 5 & ¶ 23). Indeed, Nunez sincerely believes to engage in any intimate act with his spouse is a noble act of obedience to Allah to which he acquires good deeds by virtue of honoring his spouses religious rights over him for, inter alia, kind treatment, entertaining her, fairness, company and intimacy. (Doc 34 at ¶¶ 39-44, ¶¶ 46-49). Yet, defendants argue otherwise, despite the fact that their policies limits or prohibits Nunez and his spouse from engaging in any physical contact beyond meeting and departing. (Plt's App'x at 1, ¶¶ 23-24 and; App'x at 28), but they do not place those same limitations on small children visitors who are permitted to sit on an inmates lap for an unlimited amount of time. Under such circumstances, a prison's policy "underinclusiveness" is relevant to the issue of a compelling interest. Williams-Yulee v. Fla. Bar., 135 S.Ct 1656, 1668 (2015)(Stating,"Underinclusiveness can also reveal that a law does not advance a compelling interest). Thereby, raising an inference that the prison's claimed interest in "security" isn't actually so compelling after all. Yellowbear v. Lampert, 741 F.3d 48, 60 (10th Cir.2014). If a policy is underinclusive, the prison must provide "an adequate explanation for its differential treatment" in order to avoid the conslusion that the policy does not serve a compelling interest. In otherwords, a policy that is substantially underinclusive because it permits the prohibited conduct for some inmates but not others, cannot satisfy strict scrutiny unless the government provides an adequate explanation for the discrepancy. Holt, supra, 135 S.Ct at 865-866. Defendants has done none of that.

13

Instead, they argue that the Pennsylvania Administrative Code prohibits Nunez from having "private visits" with his spouse because all contact visits in Pennsylvania are required to take place under "official supervision" under 37 Pa.Code §93.3(h)(6). This Court should not be pursuaded by such an argument because the defendants interpretation of the relevant admininstrative code is plainly erroneous, and inconsistent with its Department visiting policy that do permit Official visitors to meet "privately" with ANY inmate in their cell or room where they are confined. (Doc 80 Def's App'x at C, DC-ADM 812 Section 2.B.4). Clearly, the defendant's interpretation of the regulation at issue, is nothing more than a convenient litigation position, and should not be given any deference. Christopher v. Smithkline Beecham Corp., 132 S.Ct 2156, 2166 (2012); Williams v. Wetzel, 222 A.3d 49, 55 (Pa.Commw.2019)(finding Department's interpretation of regulation unreasonable because it was not free from doubt). If anything at all, this Court should find the Department's visiting policy substantially underinclusive, because the Department permits official visitors to meet privately with an inmate in their cell or room where they are confined, for nonreligious conduct, but categorically prohibits Nunez and his spouse from privately visiting one another to engage in religious conduct. Furthermore, unlike regular contact visits, non-contact visiting rooms are not monitored or recorded by surveillance cameras. (Plt's App'x at 1, ¶¶ 19-20).                Nunez has proposed allowing him and his spouse to use the non-contact visiting room booth in such a way as to allow them to be intimate with one another in private, away from small children and other adults, but the defendants has not even considered it as a least restrictive means. (Plt's App'x at 14, ¶ 25; and App'x at 15, ¶ 13 & ¶ 25).

14

Nor have they considered family/conjugal visitation programs in other state prisons in states like, California, Washington, and New York. (Doc 34 at ¶¶ 26-27). A fact they themselves admitted when responding to Nunez's interrogatories. (Plt's App'x at 14, ¶ 12 & ¶ 24; App'x at 5, ¶ 12). Subsequently, defendants have not satisfied their burden in showing that the Department's policy categorically banning private conjugal visits is a least restrictive means in protecting its "broadly formulated" interest in security. Particularly, since several prisons across the nation permit some form of private family/conjugal visits, despite such security concerns. (Plt's App'x at 34, pages 5-6, and; App'x 31, pages 1-4). The defendants failure to explain why other state prisons across the nation, with the same compelling interest in security, are able to accommodate the same practice demonstrates that the defendants failed to use the least restrictive means available so as to not substantially burden Nunez's religious exercise. See Holt, supra, 135 S.Ct at 866 (Explaining when other prisons allow a specific practice, either for any reason or a religious reason, is a relevant factor to a determination that the Department could satisfy its security concerns through a means less restrictive then denying a prisoner the exemption he seeks) also see Washington, supra, 497 F.3d at 385 (same).

2. Health

From the outset, Nunez has consistently maintained that he has no sexually transmittable infections ("STIs") to spread and has received all three (3) vacination shots for Hepatitis. (Plt's App'x at 1, ¶ 27). A fact apparent in his medical file which the Department possess. (Plt's App'x at 11). Yet, defendants argue otherwise. Asserting that the Department has a general interest in protecting the health of inmates in general from contracting or spreading STIs throughout its prisons. (Doc 79 at page 12-13).

15

The problem with the defendants argument is that its based on pure speculation. And not  based on any facts or evidence within the summary judgment record. So the defendants reliance on the declaration of Arlene Seid do not substantiate their fears. That is because the declaration speaks in general terms on how STIs can be spread and physical complication on one's health "if" one contracts an STI. Amounting to nothing more than a 'broadly formulated' interest, coupled with speculation on how inmates health may be placed in danger if conjugal visits were allowed. That sort of fear and speculation is insufficient to satisfy the defendants burden, and fails to engage in the sort of case-by-case analysis that RLUIPA requires. Ramirez, 142 S.Ct at 1280. Here, Nunez has shown he has no STIs to spread. And that he is not seeking conjugal visits with some random visitor. His request for conjugal visits is confined to having such visits with his legal spouse, to engage in intimate acts with her in private.

When Nunez suggested to have his spouse undergo a medical screening test as a pre-condition to being approved for a conjugal visit, defendants denied any such suggestion as a least restrictive means. (Plt's App'x at 14, ¶¶ 14-15 & ¶ 17 ; App'x at 15, ¶¶ 8-10). And they also denied   providing Nunez and his spouse with condoms would serve as a least restrictive means aswell. (Plt's App'x at 14, ¶ 18 ; and App'x at 15, ¶ 15). The defendants has essentially rejected the same practices implemented in other state prisons that require every inmate and legal spouse to undergo a medical screening test before being approved for a private conjugal visit, in order to protect the health of inmates and stop the spread of STIs. (Plt's App'x at 42, pages 4-6 ; App'x at 41, page 10). And did so without considering the policies and practices for conjugal visits in those state prisons like New York and Washington. (Plt's App'x at 14, ¶ 12 & ¶ 24, and; App'x at 15, ¶ 12)

16

Comparison between prison institutions are analytically useful when considering whether the government is employing the least restrictive means. Indeed, the failure of a defendant to explain why another prison with the same compelling interest was able to accommodate the same practices may constitute a failure to establish that the defendant was using the least restrictive means. Washington, supra, 497 F.3d at 285. Also see Shakur v. Schriro, 514 F.3d 878, 890-91 (9th Cir.2008). In sum, Nunez has shown that requiring him and his spouse to undergo a medical screening test for STIs qualifies as a least restrictive means which protects the defendants interest in health.

Additionally, the defendants fleeting reference to "cost concerns" should be rejected outright. They failed to present specific facts and evidence to substantiate those concerns pursuant to Fed.R.Civ.P. 56(e)(1). The conclusory statement made in Woodring & Seid's declarations are simply not enough. (Doc 80 Def's App'x at E, ¶ 37 & ¶ 41 ; App'x at F, ¶ 18). Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir.2008)(conclusory declarations that do not affirmatively show personal knowledge of specific facts are insufficient). Such is the case when considering the fact that the Declaration of Arlene Seid, is not even based on "personal knowledge". She merely avers that her declaration speaks on matters "[t]o the best of knowledge, information and belief." (Doc 80 Def's App'x at F, page 6).

3. <u>Safety</u>

The defendants go on to "speculate" that if private conjugal visits were allowed, there is the potential for a crime of sexual assualt to occur on government property. They go on to reference the declaration of Arlene Seid, generally, (Doc 78 at page 14), who offers no specific facts, or evidence to substantiate her conslusory statement in that regard. Nor any statistical evidence.

17

Seperate and apart from the fact that her declaration is not based on her "personal knowledge", she is simply not competent to speak on such matters relating to human behavior. Her declaration should thus be striken under Fed.R.Civ.P. 56(c)(4). Especially since academic research on the issue demonstrates that conjugal visits correlate with fewer sexual assualts in prison. (Plt's App'x at 37 and; App'x at 39, page 5-9). In fact, academic scholars who researched this issue has shown permitting conjugal visits leads to positive inmate behavior and strengthens family ties and eases a prisoner's transition home upon release. (Plt's App'x at 34, page 5-6). A fact recognized by prior Department officials and politicians as far back as 1987. (Plt's App'x at 17).

Defendants fears are unfounded and indeed speculative. They have not evaluated Nunez's RLUIPA claim in light of the alleged safety risk they claim Nunez poses if he is allowed to have private conjugal visits with his spouse in a manner RLUIPA requires. Indeed, they have stated as much when responding to Nunez's interrogatories. (Plt's App'x at 14, ¶ 11 & ¶ 22). Nor have they presented specific facts or evidence to suggest that Nunez poses a safety risk to his spouse if they were allowed to visit one another privately. Therefore, their argument comes to conjecture regarding what Nunez may hypothetically do to his spouse in the future. Such speculation is insufficient to satisfy defendants burden, and fails to engage in the sort of case-by-case analysis that RLUIPA requires. Ramirez, supra, 142 S.Ct at 1280.

Furthermore, Nunez has specifically asserted in his declaration that it is a sin for him to force his spouse to engage in any intimate act with him against her will and he has no criminal conviction for domestic violence or ever acted violently towards his spouse. In fact, the Department itself has classified Nunez as a CL-3 inmate who exhibit "non assaultive" behavior. (Plt's App'x at 1, ¶ 18, ¶¶ 28-29).

Defendants arguments aside, their visiting policy is substantially underinclusive because they permit "official visitors" to privately meet with inmates in their cell or seperate room, (Doc 80 Def's App'x at C, DC-ADM 812 Section 2.B.4.a-b.), a non-religious practice, but they prohibit Nunez and his spouse from engaging in that same practice for a religious reason. Notwithstanding, that the Department has expressed that will assume no liability for any visitors injuries or damage to property or loss of property as a result of a person entering a visiting area or any other area within a facility. (Plt's App'x at 35, page 1 ; App'x at 8). Such evidence of the Department's policy underinclusiveness casts significant doubt on both whether the government's asserted interest is compelling and whether their policy actually is the least restrictive means of furthering that interest. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 547 (1993)(A law cannot be regarded as protecting a compelling interest when it leaves appreciable damage to that supposedly vital interest unprohibited)(Cited in Holt, supra, 135 S.Ct at 866).

At bottom, the defendants : failed to show that a categorical ban on private conjugal visits with Nunez's lawful spouse, is the least restrictive means of accomplishing any of their asserted goals because they have done nothing to rebut obvious alternatives. Such as reconfiguring non-contact visiting room booths in such a way as to allow Nunez and his spouse to intimately entertain one another in complete privacy or to place module/mobile homes on prison grounds, to accommodate such conjugal visits. Similar to other states. Such as: New York (Plt's App'x at 42), California (Plt's App'x at 43, page 3) and Washington. (Plt's App'x at 41, page 2-3 and; App'x at 34, page 5).

19

PRAYING IN VISITING ROOM WITH NUNEZ VISITORS

B. DEFENDANTS SHOULD BE DENIED SUMMARY JUDGMENT ON NUNEZ'S CONGREGATIONAL PRAYER CLAIM BECAUSE FACTS ARE IN DISPUTE AS TO WHETHER DEFENDANTS MET THEIR BURDEN IN PROVING ITS ALLEGED COMPELLING GOVERNMENT INTERESTS AND LEAST RESTRICTIVE MEANS TO JUSTIFY ITS POLICY PROHIBITING NUNEZ TO CONGREGATE IN PRAYER WITH HIS VISITORS DURING A CONTACT VISIT

It should be noted that the defendants seems to analyze all of Nunez's RLUIPA claims under the Turner's "legitimate penological interest" test. Rather, than the "compelling government interest" test. That is significant because RLUIPA is subject to the lower standard of a "legitimate penological interest" standard and provides greater protection for "any exercise of religion" than Turner. The Supreme Court made that clear in Holt, supra, 135 S.Ct at 862 (Noting RLUIPA provides greater protection for religious exercise that Turner). When analyzing Nunez's claim under RLUIPA, it is apparent that the defendants has not met its burden in "demonstrating" a compelling interest or least restrictive means.

Initially, when Nunez's RAR was denied, defendant Bickell NEVER asserted that his denial was grounded on a "security" concern. (Plt's App'x at 29). And certainly did not assert as much when responding to Nunez's interrogatory request. (Plt's App'x at 14, ¶ 16). Not even the former Secretary for the Department claimed a security concern when responding to Nunez's interrogatories. (Plt's App'x at 15, ¶¶ 21-22). The Defendants has consistently alleged a "safety" concern and nothing more. Suggesting that the defendants are merely advancing a "security" interest as afterthought. When in reality, it is merely an exaggerated concern based on nothing more than conjecture.

At any rate, their security interest is not compelling for the same reason Nunez argued why their asserted security concern, relating to his conjugal visit claim isn't compelling. See Pages 8-12, supra. The defendants reliance on the declaration of Scott Woodring, simply can not be relied upon to suggest otherwise. Particularly since he only articulates a general concern of how security maybe implicated, in general, if inmates were allowed to pray with their visitors during a contact visit. Thereby, asserting a "broadly formulated interest" in security. But as Nunez argued, supra, that is not enough. RLUIPA contemplates a more focused inquiry and requires the government to demonstrate that the compelling interest test is satisfied through application of the challenged law to the person's (Nunez). See page 8-10, supra.

In this case, Nunez is seeking to congregate in prayer with his visitors during his contact visit, in a designated space in the visiting room. Away from other children and visitors. (Doc 34 at ¶ 73). And his reasoning for doing so is because the defendants has implemented a state-wide policy that prohibits him from congregating in prayer with his visitors during their contact visit. Id. at ¶ 68. Nunez's religious faith ("Islam") considers a valid "congregational prayer" to consist of two or more Muslims gathering to pray. (Plt's App'x at 4, page 2 ¶ 2). When gathering to pray, Muslims must perform their prayers consistent with the pillars of the prayer. (Doc 34 at ¶ 67). One such pillar requires a Muslim to "stand". Not sit. Standing in prayer is mandatory and to do otherwise, without a valid excuse, invalidates the prayer and constitutes a sin. (Plt's App'x at 4, page 3 ¶¶ 7-9). And for a muslim to not congregate in prayer with another muslim, when an obligatory prayer is called, leads that Muslim to hell. (Plt's App'x at 4, page 3 ¶ 5 & ¶ 8).

As a result of the defendants general "no standing for prayer" policy, Nunez and his spouse can   not consummate their marriage. To consummate one's marriage as a Muslim, Nunez's faith requires him to lead a congregational prayer with is spouse, before he can even intimately approach her in private, following their marriage ceremony. (Doc 34 at ¶ 10). And are compelled to deviate from their sincere religious practice to congregate in prayer together during the prescribed times to pray. Causing me t delay my prayers (Dhuhr & Asr). (Plt's App'x at 1, ¶¶ 31-32).

Notwithstanding, what Nunez sincerely believes, the defendants would have this court believe that his religious exercise is not being substantially burdened because he can pray privately by himself in his cell or quietly in a seated position with his visitor in the designated visiting area. (Doc 78 at page 15). But those suggestions requires Nunez's to modify his religious practice in such a way as to invalidate his prayer and sin in the process. As Nunez stated in his declaration, congregating in prayer with his visitors, while standing, is obligatory. Not optional. (Plt' App'x at 1, ¶¶ 32-35). The defendants argument in that regard should be rejected. Holt, supra, 135 S.Ct at 863 (RLUIPA's substantial burden inquiry asks whether the government has substantially burdened religious exercise, not whether the RLUIPA claimant is able to engage in other forms of religious exercise).

As to Nunez's request to congregate in prayer with his spouse in private, Nunez has only requested it because he has not consummated his marriage. And the prayer with his spouse, is a pre-condition religious act that must be performed, before they can be intimate with one another. (Doc 34 at ¶ 10). It was also suggested as a least restrictive way to pray with his spouse in the same room where they can also entertain one another in private, away from other visitors.

Even more uncompelling, the defendants suggest that other inmates may request the same accommodations to pray with their visitors at the same time. Thereby, converting a neutral meeting space into one used for religious purposes. (Doc 78 at 16). For starters, the defendants has failed to offer any specific facts or evidence to prove that those asserted fact are valid. They only speculate such a concern. But as the Supreme Court made clear in Ramirez,"[S]peculation is insufficient to satisfy defendants burden, and fails to engage in the sort of case-by-case analysis the RLUIPA requires". Ramirez, 142 S.Ct at 1280. And to the extent that the defendants argument is that Nunez's request is administratively burdensome because it would lead to more requests for accommodation from inmates, such an argument is the "classic rejoinder of bureaucrats throughout history" rejected by the Supreme Court in Holt, supra, 135 S.Ct at 866. In fact, narrowing the pool of potential accommodations is what the sincerity requirement accomplishes: it ensures that accommodations are only available to the few who sincerely hold protected beliefs. Id at 866-67 (noting if prison officials suspect inmates are using accommodations in bad faith "prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic). What the defendants fail to admit is that the Department's visiting policy : : currently creates a meeting place for religious and/or spiritual advisors to meet with inmates. (Doc 80 Def's App'x at D, DC-ADM 821 Section 2.B.2.)

In this case the defendants here as failed to meet its burden in proving that they considered an alternative least restrictive. Nunez, however, has proposed to have the defendants construct or designate a clean area in the visiting room to allow him and his visitors to pray, away from other other visitors. (Doc 34 at ¶ 71).

23

He has also proposed to allow him and his visitors to congregate in prayer with his visitors inside a non-contact visiting room when those rooms are unoccupied and available as readily available alternative. (Doc 34 at ¶ 73). But the defendants rejected each of those proposals. (Plt's App'x at 14, ¶ 16 and; App'x at 15, ¶¶21-22). Notwithstanding, that the Department has permitted prisons to construct or designate children play areas in visiting rooms per policy. (Doc 80 Def's App'x at C, DC-ADM 812 Section 1.A.4.). At SCI Mahanoy, where Nunez is held, they have constructed a large children play area, filled with toys, books, and TV's, that is constantly monitored with surveilance cameras. (Plt's App'x at 1, ¶ 22 ; App'x at 20).

The defendants has not explained why they cannot construct or designate a clean space Nunez and his visitors to congregate in prayer. And to the extent they have done so for non-religious activities, supports a finding that their asserted interests in "safety & security" is not so compelling after all. Especially, since the department has already made techological advaces throughout the department to stop the smuggling of drugs and other contraband from entering its prisons as noted in pages 10-12, supra. Indeed, with the defendants exaggerated security and safety concerns aside, one cannot seriously dispute that the Department's general rule prohibiting Nunez ? and his visitor from congregating in prayer, is substantially underinclusive. Given the fact that small children can have a designated space to play, and sit on an inmate's lap, for an unlimited time period, for a nonreligious reason, but yet refuse to construct or designate a clean area for Nunez and his visitors to pray for religious reasons, while under official supervision. The defendants has therefore failed to met its burden that denying Nunez's religious accommodation serves a compelling interest in security and safety, and that they considered alternatives that is least restrictive.

C. DEFENDANTS SHOULD BE DENIED SUMMARY JUDGMENT ON NUNEZ'S CIRCUMCISION CLAIM BECAUSE GENUINE FACT ARE IN DISPUTE AS TO WHETHER THE DEFENDANTS HAS MET THEIR BURDEN IN PROVING A COMPELLING INTEREST IN DECLINING NUNEZ CIRCUMCISION SURGERY

Nunez has alleged that he sincerely believes that circumcision is one of Allah's highest commandments and a sunnah ("way") of Prophet Muhammad, which all Muslims who convert to the religion of Islam must do as early as possible. (Doc 34 at ¶¶91-93). And because he converted to Islam uncircumcised he has difficulty in keeping his genitals clean. Leaving him in constant fear that his acts of worship, such as prayers, will not be accepted. (Doc 34 at ¶¶ 94-95). However, he maintains in his declaration that he is not seeking circumcision surgery solely to keep his genital area clean. He is requesting to be circumcised because it is obligatory for new Muslims who convert to Islam to be circumcised. (Plt's App'x at 1, ¶ 36). That is because getting circumcised is one of the clear and apparent practices that distinguishes Muslims from non-muslims. And also a means of completing and perfecting the fitra upon which Allah created all people. (Doc 34 at ¶¶ 91-92).

Despite acknowledging that Nunez's religious practice is being substantially burdened by denying him circumcision surgery, (Doc 78 at page 21),   . they assert that they have a compelling interest in avoiding administrative cost burdens. But administrative cost burdens is not so compelling under RLUIPA. Because RLUIPA explicitly acknowledges that it may be necessary to incur expenses in order to avoid placing substantial burdens on a prisoner's religious exercise. See 42 U.S.C. §2000cc-3(c). Leaving one to question whether administrative convenience and costs savings are actually compelling government interests. Memorial Hospital v. Maricopa County, 415 U.S. 250, 262-69 (1974). Particularly in this case.

25

Largely because the defendants rely on a conslusory declaration of Arlene Seid. Who's declaration is not even based on "personal knowledge". That is troubling because she has not explained that she researched the cost of circumcision surgery or how she came to know what traditional circumcsion surgery cost. Nor has presented any evidence to substantiate her alleged facts. She merely "speculates" The cost of circumcision surgery and "speculate" that complications and government resources may be spent if Nunez's surgery isn't successful. For his part, Nunez has disputed the compentency of her declaration under Fed.R.Civ.P. 56(c)(2) and (c)(4). And has further argued that such speculative fears and concerns are insufficient under Ramirez, supra, 142 S.Ct 1280. Because she has not presented any facts or evidence to substantiate her fears.

Nunez has argued throughout his administrative grievance appeals that he will sign an "informed consent waiver" and assume any medical or liability risk that may or may not occur after surgery. To alleviate any concerns of the Department noted in defendant Bickell's denial notification. (Plt's App'x at 29). Yet, the defendants has not considered his proposal as a least restrictive means.

They simply rely on Vega v. Lantz, 2013 WL 6191855 (D.C.Conn.2013) to suggest that the same reasoning should apply. But fail to recognize that the decision in Vega was reached after a trial was held and a verdict was found in the defendants favor. Not only is Vega distinguishable on th facts, but its legal reasoning is in question aswell. Particularly, since it predates the Supreme Court's decision in Holt and appears to apply the Turner's "legitimate penological interest" test to Vega's RLUIPA claim which is not the governing standard under RLUIPA. Warsoldier    v. Woodford, 418 F.3d 989, 997-98 (9th Cir.2005)(RLUIPA replaced the Turner test with a compelling government interest test).

Genuine material facts are in dispute as to whether the defendants has raised a comeplling interest in costs and administrative burdens and whether a least restrictive means is available to accommodate Nunez's religious exercise. Since Nunez has said, if the Department pays for his circumcision surgery, he will assume the risk or any complications is such was to occur.

CONCLUSION

For the reasons argued, supra, the defendants motion for summary judgment should be denied.

Date: July 15, 2022

By, _Fernando Nunez_

Fernando Nunez Jr.

<u>VERIFICATION</u>

I, Fernando Nunez Jr., the plaintiff in this case, hereby verifies to have prepared the foregoing reply brief in response to the defendants motion for summary judgment, and that the statements of fact made herein are subject to the penalties of 28 U.S.C. §1746 (relating to unsworn falsification to authorities).


Date: July 15, 2022                        By: _____
                                               Fernando Nunez Jr.
                                               #FM8959
                                               SCI Mahanoy
                                               301 Gray Line Drive
                                               Frackville, PA 17931

## CERTIFICATE OF SERVICE

__ I, certify to have served the foregoing,"Reply Brief to Defendants' Motion For Summary Judgment," via first class mail, postage prepaid, upon the person(s) and addresses noted below.


Abby N. Trovinger, Esq.        Office of The Clerk
Pa. Department of Corrections   U.S. Middle District of Pennsylvania
1920 Technology Parkway       228 Walnut Street
Mechanicsburg, PA 17050       P.O. Box 983
                                   Harrisburg, PA 17108


Date: July 15, 2022

s/ _Fernando Nunez_

Fernando Nunez Jr.
#FM8959
SCI-Mahanoy
301 Gray Line Drive
Frackville, PA 17931

Fernando Nunez Jr.
#FM8959
SCI Mahanoy
301 Gray Line Drive
Frackville, PA 17931

RECEIVED
HARRISBURG, PA
JUL 28 2022
PER _____
DEPUTY CLERK

Office of The Clerk
United States District Court
Middle District of Pennsylvania
U.S. Courthouse
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17108

INMATE MAIL
PA DEPT OF
CORRECTIONS

