# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FERNANDO NUNEZ, JR., | : | Civil No. 3:15-cv-01573 |
| Plaintiff, | : | |
| v. | : | |
| TOM W. WOLF *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Defendants' motion for summary judgment. (Doc. 77.) Plaintiff brings a civil rights complaint pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc, *et. seq.* against two remaining Defendants, Tabb Bickell, Regional Secretary of the Department of Corrections ("DOC"), and John E. Wetzel,[1] Secretary of the DOC. (Doc. 34.) Plaintiff asserts that Defendants substantially burdened the exercise of his religion by refusing to allow him to consummate his marriage, refusing to allow him group prayer in a private room, and refusing his request for a circumcision during his time at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"). For the reasons articulated below, the court will grant judgment for Defendants and close the case.

---

[1] On May 13, 2022, the court substituted the name of the current Secretary of the Department of Corrections, George Little, for the former Secretary, John Wetzel, with respect to those aspects of the complaint which only seek prospective and injunctive relief. (Doc. 102.)

1

## PROCEDURAL BACKGROUND

Plaintiff, a self-represented inmate currently housed at SCI- Mahanoy, initiated this action in August of 2015 and is proceeding *in forma pauperis*. (Docs. 1, 16.) Plaintiff filed an amended complaint after Defendants sought to dismiss the original Complaint. (Doc. 34.) In his amended complaint, he raises a RLUIPA claim against Bickell and Wetzel, alleging that Defendants substantially burdened the exercise of his religion by refusing to allow him to consummate his marriage, refusing to allow him group prayer in a private room, and refusing his request for a circumcision. (*Id.*)

Defendants filed a motion for summary judgment. (Docs. 77.) Plaintiff responded, Doc. 111, and the time for Defendants' reply has expired. The motion is now ripe to be addressed by this court.

## JURISDICTION AND VENUE

The court has federal question jurisdiction over the complaint as it asserts claims under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331. Venue is appropriate because all actions detailed in the amended complaint occurred within the Middle District of Pennsylvania. 28 U.S.C. § 1391(b)(2).

## STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.*  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

     Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Facts Material to Plaintiff's Claims[2]

Plaintiff was incarcerated at SCI-Huntingdon during all the events alleged in the amended complaint. (Doc. 34). He asserts that he is a devout and practicing Muslim. (Doc. 79 ¶ 4). Plaintiff was permitted to marry in 2013, but was not permitted to consummate his marriage in accordance with his religious beliefs. (*Id.* ¶ 5.) He is seeking ongoing conjugal visits and other forms of intimacy as understood in Islamic practice including light talk, love expressions, touching, caressing, kissing, and fondling. (*Id.* ¶ 6.) Plaintiff is also seeking to engage in congregate prayer in private with his family during contact visits. (*Id.* ¶ 10.) Plaintiff describes his request as the ability "to congregate in prayer with my family and friends 'standing' in a secured room away from other visitors." (Doc. 80-9, p. 2.)[3] DOC policy allows for inmates to pray silently while sitting. (Doc. 79 ¶ 15.) However, Plaintiff asserts this is inconsistent with the Islamic faith. (Doc. 80-9, p. 2.) Finally, Plaintiff is seeking a circumcision for religious reasons. (Doc. 79. ¶ 8.) Plaintiff's request assumes that Defendants would be responsible for incurring the expense for such procedure. (Doc. 110, ¶ 8.)

---

[2] In accordance with the court's Local Rules, the parties have filed their respective statements of material facts. (Doc. 79, 110.) From those statements, and the evidence submitted by the parties, the court has identified the material facts in this matter and has set forth those facts in this section.

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Plaintiff initially requested the conjugal visits, private congregate prayer, and circumcision in January of 2015.  (Doc. 79 ¶ 10.)  The request for conjugal visits was denied due to safety, security, and health concerns.  (*Id*. ¶11.)  The private request for group prayer was denied because of safety concerns and because it would cause a distraction for families of other inmates meeting their loved ones, as well as the institution's inability to provide this option for all inmates.  (*Id*. ¶ 12.)  The request for circumcision was denied because it is an elective surgery and not medically necessary.  (*Id*. ¶ 13.)  The DOC cited the cost involved for elective procedures and cited Policy 13.2.1 as indicating that the DOC does not pay for any cosmetic surgeries.  (*Id*.)

Plaintiff filed grievance number 564319 relating to his request for conjugal visits, which was denied due to safety, security, and health concerns, and it was noted that he is permitted to embrace and kiss his spouse at the beginning and end of each visit.  (*Id*. ¶ 14.)  This denial was upheld on the appeal at both the first and second levels based on the same rationale.  (*Id*.)

Plaintiff filed grievance number 562984 regarding the request for congregate prayer, and it was denied because inmates share the visiting room, and that space is not for the purpose of practicing religion.  (*Id*. ¶ 15.)  Plaintiff is permitted to quietly pray in a seated position with his guests.  (*Id*.)  This denial was upheld on appeal at the first and second levels based on the same rationale.  (*Id*.)

Plaintiff filed grievance number 564054 regarding his request for a circumcision, which was denied because the DOC does not permit elective surgeries.  (*Id*. ¶ 16.)  This denial was upheld on appeal at the first and second levels based on the same rationale.  (*Id*.)

Plaintiff requests injunctive relief "enjoining the Defendants . . . from enforcing the Administrative Code regulation and Department policies at issue, so as to not continue to substantially burden the Plaintiff's religious beliefs" and "[o]rder the Defendants in his action to implement a family/conjugal visit program, and execute policies and practices which serve to accommodate Plaintiff's religious beliefs."  (Doc. 34 ¶ 106.)

## B. Defendants Will be Granted Judgment on Plaintiff's RLUIPA Claims.

RLUIPA "protects institutionalized persons who are unable to freely attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion".  *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).  In relevant part, RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

To establish a *prima facie* case under RLUIPA, an inmate must demonstrate that: (1) he engaged in a religious exercise; and (2) the religious exercise was substantially burdened. If the plaintiff makes this *prima facie* showing, the burden then shifts to the government "to show that the policy is in furtherance of a compelling governmental interest and is the least restrictive means of furthering this interest." *Washington v. Klem,* 497 F.3d 272, 283 (3d Cir. 2007) (citing 42 U.S.C. § 2000cc-1(a)). Alternatively, if the inmate fails to present evidence to support a *prima facie* case, the government need not demonstrate that "it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2780 (2014)). The application of the compelling interest standard is context-specific, and deferential to the prison authorities' decisions about how to manage the institution. *Washington*, 497 F.3d at 283 (citing *Cutter*, 544 U.S. at 722–23).

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief 42 U.S.C. § 2000cc–5(7)(A). The Third Circuit has defined "substantial burden" as follows:

> For the purposes of RLUIPA, a "substantial burden" exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other

> inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington,* 497 F.3d at 280 (emphasis in original). A "substantial burden" includes a rule or regulation which compels the prisoner to engage in "conduct that seriously violates [his] religious beliefs." *Holt,* 135 S.Ct. at 862 (quoting *Hobby Lobby*, 134 S.Ct. at 2775). "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.* at 862.

Here, Plaintiff, a Muslim, alleges that the DOC is placing a substantial burden on his religious practices by denying him conjugal visits with his wife, private congregate prayer with his visitors, and circumcision surgery.

### 1. Conjugal Visits

Plaintiff alleges that consummating his marriage is a requirement of his religious beliefs. (Doc. 34, ¶¶ 10–14.) He alleges, therefore, that the DOC's policy prohibiting conjugal visits violates his Islamic beliefs. (Doc. 77, p. 11.) Defendants do not challenge the sincerity of Plaintiff's belief; nor do they challenge Plaintiff's establishment of a *prima facie* case under the RLUIPA. (Doc. 78.) Instead, Defendants argue that their policy is in furtherance of a compelling

9

governmental interest and is the least restrictive means of furthering this interest. (*Id.*)

Plaintiff's request for conjugal visits was denied due to safety, security, and health concerns. (Doc. 79 ¶ 11.) Plaintiff does not challenge that safety, security, and health are compelling governmental interests, but asserts that the DOC's policy is not the least restrictive means of furthering these interests. (Doc. 111.) First, he argues that Defendants are speculating instead of addressing facts. (*Id.*, p. 12.) Plaintiff cites *Washington*, in support of his assertion that Defendants' statement of compelling government interests is mere speculation rather than fact. (*Id.*)

The court observes that Defendants have provided an affidavit from Major Scott Woodring, the Chief of Security for the DOC, providing an explanation for how DOC policy furthers the named interest. (Doc. 82-5). Contrary to Plaintiff's assertion, this is sufficient under *Washington*, which found that the DOC's failure to explain how their policy furthered their interests was an unacceptable conclusory statement. 497 F.3d at 283. Unlike the conclusory statement provided in *Washington*, here Major. Woodring explains that "[v]isiting room areas are the main avenue of the introduction of contraband into Pennsylvania state prisons." (Doc. 80-5. ¶10.) Additionally, Major Woodring states that in Pennsylvania all contact visits in a prison are to take place under official supervision. (*Id.* ¶ 16.)

Plaintiff counters this evidence with citations to articles that discuss DOC's employees bringing contraband into prisons and asserts that the introduction of contraband is an internal problem not mitigated by restricting contact visits. (Docs. 110-2, 111.)

Accepting the evidence that employees are a source of contraband in prisons, this does not render Major Woodring's evidence invalid. The court accepts that there are multiple sources attempting to introduce contraband into prisons. Major Woodring's evidence is that contact visits are the "main avenue" for bringing contraband into prisons. Plaintiff introduces a memo that lists the seven ways contraband is being introduced to the prisons. (Doc. 110-3.) "Visitors" is listed as number three with mail and legal mail listed as numbers one and two. (*Id.*, p. 3.) However, nothing in this memo indicates that the list provided was made in order of frequency. (*Id.*) Indeed, Plaintiff's evidence is consistent with Major Woodring's evidence.

Plaintiff also argues that other states' correctional systems allow for such visits, including California, New York, and Washington. (*Id.*) He asks the court to take judicial notice of the visitation policies of these states' correctional institutions as evidence of a less restrictive means of furthering the interests of safety, security, and health concerns. (*Id.*, p. 19–20.) However, the court notes that the application of the compelling interest standard is context-specific and deferential to the prison

11

authorities' decisions about how to run their institution. *Washington*, 497 F.3d at 283 (citing *Cutter*, 544 U.S. at 722– 23).  There is no doubt that the states who have implemented conjugal visits had to allocate significant resources to accommodate these visits.  Major Woodring addresses this in his affidavit: "Denying Plaintiff's request for conjugal visits serves the legitimate penological interest of utilizing resources of staffing, space, and time to best serve all inmates and not just this Plaintiff," and "[a] with conjugal visits, scarcity of resources is a concern . . ." (Doc. 80-5 ¶¶ 22, 37.)  Plaintiff has failed to present evidence to counter Defendants' evidence that the current visiting policy regarding conjugal visits is the least restrictive means *available*–considering the DOC's limited resources.  For this reason and the reasons stated above, judgment will be entered in Defendants' favor as to the issue of conjugal visits.

### 2. Congregate Prayer

Plaintiff is seeking to engage in congregate prayer in private with his family during contact visits.  He alleges that the DOC's policy prohibiting group prayer in private rooms violates his Islamic beliefs.  (Doc. 111, p. 25.)  Defendants do not challenge Plaintiff's sincerity in his belief; nor have they made any challenge to Plaintiff's establishment of a *prima facie* case under the RLUIPA.  (Doc. 78.) Instead, Defendants argue that their policy is in the furtherance of a compelling

governmental interest and is the least restrictive means of furthering these interests. (*Id.*)

Here the DOC's compelling government interest in prison safety and avoiding the introduction of contraband into the prison is furthered by not allowing private rooms for group prayer during contact visits in the same manner as not allowing private rooms for conjugal visits.  Also, as discussed above, Defendants have provided evidence that their policy against private rooms is the least restrictive means in furtherance of this government interest.  Plaintiff has failed to provide evidence to counter Defendants' evidence regarding visitors being the main avenue of contraband into prisons.  Therefore, the court will grant judgment in Defendants' favor in regards to his request for a private room for group prayer for the same reason that judgment is granted with respect to his request for conjugal visits.

Plaintiff states that he proposed a designated prayer area in the public visiting rooms as an alternative to the use of a private room. (Doc. 34 ¶ 73.)  These requests were denied on first and second levels of appeal because lying prostate on the ground would not only create a safety concern, but would also pose a major distraction to families of other inmates meeting their loved ones. (Doc. 80-1, pp. 1, 6.)  Defendants have provided evidence that keeping inmates and visitors in their seats during contact visits in the general visiting rooms is a policy in furtherance of

safety. Major Woodring asserts that avoiding group prayer in the general visiting area is required to maintain neutrality in the general visiting rooms, and neutrality is required to avoid feelings of resentment and hatred that can manifest very quickly into assaults in a prison setting. (Doc. 80-5, ¶¶ 34–36.) Plaintiff has failed to refute Defendants' evidence that that the DOC's policy of allowing quiet seated prayer is the least restrictive means to further this government interest. (Doc. 111.) Therefore, the court will grant judgment in Defendants' favor in regards to his request for a designated space for group prayer in the general visiting area.

The court notes that Defendants discussed the compelling government interest of not distracting families of other inmates meeting their loved ones. (Doc. 78.) However, the court has resolved the matter by accepting the compelling government interest of safety. Therefore, the court is not making a finding regarding whether or not avoiding distractions of visitors in the visiting room is a compelling government interest.

### 3. Circumcision

Plaintiff alleges that he sincerely believes that circumcision is one of Allah's highest commandments and a sunnah of Prophet Muhammad, which all Muslims who convert to Islam must do as early as possible. (Doc. 111, p. 29.) He further alleges that since he is uncircumcised, he has difficulty in keeping his genitals clean, which leaves him in constant fear that his acts of worship, such as prayers,

will not be accepted.  (*Id.*)  He clarifies that he is requesting circumcision for both cleanliness and as an obligatory practice for new Muslims who convert to Islam.  (*Id.*)

Defendants have not challenged Plaintiff's sincerity in this belief, nor that circumcision is integral to Muslim religious observance.  (Doc. 78.)  Nor have they challenged Plaintiff's establishment of a *prima facie* case under the RLUIPA.  (*Id.*)  Instead, the Defendants argue that their policy is in the furtherance of a compelling governmental interest and is the least restrictive means of furthering this interest.

Here, Defendants assert that "[i]t is unreasonable for the Department [of Corrections] to assume the costs of elective surgery for all inmates, including the medical expenses which it would incur if medical complications ensued following elective surgery."  (Doc. 78 citing Doc. 80-1, p. 1.)  The DOC also cited Policy 13.2.1 as indicative that it does not pay for cosmetic surgeries.  (*Id.*)  The court finds that the DOC's denial of Plaintiff's request for an elective circumcision furthers compelling government interests.  "It would be unreasonable to allocate taxpayer money to elective surgeries for prisoners . . . ."  *Vega v. Lantz*, No. 3:04CV1215(DFM) 2013 WL 6191855 at *8 (D. Conn. Nov. 26, 2013).

Furthermore, the court notes that Plaintiff asserts that he sincerely believes that circumcision is required by all Muslims who convert to Islam "as early as possible." (Doc. 111, p. 29.)  Therefore, the DOC is not precluding Plaintiff from

fulfilling this religious obligation when it is possible for him to do so, but is merely asserting that it not possible for him to have the procedure while he is incarcerated and at the public's expense. Therefore, the DOC policy prohibiting Plaintiff from receiving an elective circumcision meets the least restrictive means test, and judgment will be entered in favor of Defendants.

## CONCLUSION

For the reasons discussed above, the court will grant Defendants' motion for summary judgment, Doc. 77, and enter judgment in favor of Defendants and against Plaintiff. The Clerk of the Court will be directed to close this case.

An appropriate order will follow.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Court Judge  
Middle District of Pennsylvania

Dated: September 30, 2022